# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

LAWRENCE HILL, ADAM WISE, and )
ROBERT MILLER, on their own )     No. 74617-1-I
behalves and on behalf of all persons )
similarly situated, )              DIVISION ONE
)
              Respondents, )     PUBLISHED OPINION
)
          v. )
)
GARDA CL NORTHWEST, INC., f/k/a )
AT SYSTEMS NORTHWEST, INC., a )
Washington corporation, )
)
              Appellant. )     FILED: March 27, 2017

TRICKEY, A.C.J. — In this class action case, the Plaintiffs, nearly 500 employees of Garda CL Northwest, Inc. (Garda), an armored vehicle company, successfully sued Garda for denying them meal periods and rest breaks guaranteed under Washington's Industrial Welfare Act, chapter 49.12 RCW, and Minimum Wage Act, chapter 49.46 RCW. The trial court awarded the Plaintiffs double damages, prejudgment interest, and attorney fees. Garda appeals the trial court's certification of the class, denial of its motions for summary judgment, grant of the Plaintiffs' partial summary judgment motion on liability, award of double damages, award of prejudgment interest, and use of a lodestar to multiply the Plaintiffs' attorney fee award.

Garda contends that the trial court abused its discretion by certifying the class without making a clear record of its reasons or considering the criteria of CR 23. We hold that the trial court's order was sufficient because it identified the common question that predominated and explained why a class action was superior to individual actions.

Garda argues that the trial court erred by concluding that neither the Federal Aviation Administration Authorization Act of 1994 (FAAAA) nor section 301 of the Labor Management Relations Act (LMRA) preempts the Plaintiffs' claims. We hold that the FAAAA does not preempt the Plaintiffs' claims because complying with Washington law would not have had a significant impact on Garda's operations if Garda had sought a variance. We also hold that section 301 of the LMRA does not preempt the Plaintiffs' claims because the Plaintiffs' rights are independent and non-negotiable, and we do not have to interpret the Plaintiffs' various collective bargaining agreements (CBAs) with Garda in order to resolve the issue.

Garda maintains that the trial court erred by granting the Plaintiffs' summary judgment motion on Garda's liability for failing to provide meal periods and rest breaks. It argues that the Plaintiffs' waived their right to meal periods when they acknowledged their CBAs, which purported to contain waivers. Because the Plaintiffs could not waive their meal periods through a CBA, we hold that acknowledging their CBAs did not constitute a waiver. Garda argues further that questions of material fact remain whether the Plaintiffs were able to take rest breaks. We hold that Garda's own testimony and materials established that there was a policy against taking true breaks. Accordingly, we affirm summary judgment on Garda's liability.

Garda also argues that the court erred by awarding double damages for the missed meal periods because those are not wage violations and Garda's conduct was not willful. We hold that failing to provide meal breaks is a wage violation, but agree that Garda's conduct was not willful. Therefore, we reverse the award of double damages for the meal period violations.

2

Garda also argues that the court should not have awarded prejudgment interest for any damages for which it awarded double damages. Because prejudgment interest is not available when the plaintiff receives punitive damages, such as double damages, we reverse the award of prejudgment interest on the rest break damages.

Finally, Garda contends that the trial court abused its discretion by applying a 1.5 lodestar multiplier to the Plaintiffs' attorney fee award. This multiplier was reasonable given the risks of the case and the fact that the Plaintiffs' attorneys took the case on a contingency basis. We affirm.

## FACTS

Garda is an armored truck company that picks up, transports, and delivers currency and other valuables. Each truck has a two-person crew, consisting of a driver and a messenger. The truck routes vary in length and number of stops, with some requiring as long as 10 hours to complete.

Garda operates branches in seven cities in Washington: Seattle, Tacoma, Mount Vernon, Wenatchee, Yakima, Spokane, and Pasco. Company-wide policies, applicable to all Washington branches, include rules for ensuring the safety and security of the truck, the crew, and the valuables. The policies require Garda drivers and messengers to be alert at all times and prohibit Garda employees from bringing personal cell phones or reading materials on the trucks.

Most branches have their own managers. Each branch has its own drivers association, which negotiates CBAs on behalf of that branch's employees. A large percentage of Garda employees signed acknowledgments of their branches' CBAs.

Each CBA had one of the following provisions regarding meal breaks:

- "[R]outes will be scheduled without a designated lunch break."[1]

- "Employees hereto agree to an on-duty meal period."[2]

- "The Employees hereto waive any meal period(s) to which they would otherwise be entitled."[3]

Garda employees often go to the bathroom or buy food and beverages while on their routes, but do not take official meal breaks. Garda managers agree that, because of the dangerous nature of their work, all Garda employees must maintain some level of alertness during the entirety of their routes.

In February 2009, three Garda employees, Lawrence Hill, Adam Wise, and Robert Miller, sued Garda, alleging that Garda did not provide them with legally sufficient rest breaks or meal periods, in violation of the Washington Industrial Welfare Act, chapter 49.12 RCW, and the Minimum Wage Act, chapter 49.46 RCW. They moved for class certification, which the trial court granted in July 2010.

The class consists of nearly 500 current and former Garda employees (collectively, the Plaintiffs) who worked for Garda between February 11, 2006, and February 7, 2015. The court appointed Hill, Wise, and Miller as the named representatives of the class. Garda moved to compel arbitration under the terms of the CBAs, but the Washington

---

[1] Clerk's Papers (CP) at 390 (2004-2009 Mount Vernon Labor Agreement); CP at 433 (2006-2009 Pasco Labor Agreement); CP at 454 (2004-2008 Seattle Labor Agreement); CP at 497 (2007 Spokane Rules); CP at 536 (2005-2008 Tacoma Labor Agreement); CP at 578 (2006-2009 Wenatchee Labor Agreement); CP at 622 (2006-2009 Yakima Labor Agreement).
[2] CP at 413 (2009-2012 Mount Vernon Labor Agreement); CP at 1140 (2013-2016 Mount Vernon Labor Agreement); CP at 478 (2008-2011 Seattle Labor Agreement); CP at 516 (2008-2011 Spokane Labor Agreement); CP at 558 (2009-2012 Tacoma Labor Agreement).
[3] CP at 1163 (2010-2013 Pasco Labor Agreement); CP at 601 (2010-2013 Wenatchee Labor Agreement); CP at 646 (2010-2013 Yakima Labor Agreement).

Supreme Court held that the arbitration procedures were unconscionable and remanded the case back to the trial court in September 2013.[4]

Garda moved for summary judgment on the ground that the Plaintiffs' claims were preempted by section 301 of the LMRA or, in the alternative, that the Plaintiffs had waived their right to meal breaks through their CBAs. The trial court denied Garda's motion.

In December 2014, Garda received permission to amend its answer to add the affirmative defense that the FAAAA preempted the Plaintiffs' claims. Garda moved for summary judgment on this preemption argument and the trial court denied it. Garda then moved unsuccessfully to decertify the class.

The Plaintiffs moved for partial summary judgment on the issues of liability and their entitlement to double damages. The trial court granted the motion as to liability but denied summary judgment on double damages.

In June 2015, the case proceeded to a bench trial on the issue of damages and, in September, to a trial on double damages. In October, the court found for the Plaintiffs, awarding $4,209,596.61 in back pay damages, $1,668,235.62 in double damages, and $2,350,255.63 in prejudgment interest. In December, the trial court awarded the Plaintiffs $1,127,734.50 in attorney fees, after applying a 1.5 lodestar multiplier.

Garda appeals.

## ANALYSIS

### Class Certification

Garda argues that the trial court erred by certifying the class and denying its motion to decertify the class. It contends that the trial court oversimplified the case and neglected

---

[4] Hill v. Garda CL Nw., Inc., 179 Wn.2d 47, 50, 58, 308 P.3d 635 (2013).

to weigh individual questions against common questions. We disagree. The trial court's order certifying the class identified the overriding question for this case as whether Garda had provided legally-sufficient rest breaks and meal periods to all class members. The trial court did not abuse its discretion.

Civil Rule 23 governs class actions. Individuals "may sue or be sued" as representatives of a class if

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representatives will fairly and adequately protect the interests of the class.

CR 23(a).

Additionally, to maintain a class action, the court must find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." CR 23(b)(3).[5]

"This court reviews a trial court's decision to certify a class for [an] abuse of discretion." Miller v. Farmer Bros. Co., 115 Wn. App. 815, 820, 64 P.3d 49 (2003). A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. Miller, 115 Wn. App. at 820. "The court must articulate on the record each of the CR 23 factors for its decision on the certification issue." Schwendeman v. USAA Cas. Ins. Co., 116 Wn. App. 9, 19, 65 P.3d 1 (2003). We review class decisions "liberally" and will "err in favor of certifying a class." Miller, 115 Wn. App. at 820.

In Miller, the trial court certified the class but did not make any findings regarding

---

[5] CR 23(b)(1) and (2) offer other bases for maintaining a class action that are not relevant to this appeal.

6

whether joinder of the 29 individual plaintiffs would be impracticable. 115 Wn. App. at 821. The Court of Appeals reversed and remanded to the trial court for additional findings showing it had rigorously considered the CR 23 criteria. Miller, 115 Wn. App. at 821. By contrast, in Eriks v. Denver, the Supreme Court held that the trial court had not erred by certifying a class when it "specifically concluded there were common questions of fact and that 'the interests of justice would be impaired by requiring [class] members to proceed individually.'" 118 Wn.2d 451, 467, 824 P.2d 1207 (1992). The Supreme Court noted that the "judge also incorporated by reference the authorities and arguments cited in the investors' brief. Therefore, it [was] obvious the judge considered all of the criteria of CR 23." Eriks, 118 Wn.2d at 467.

Here, the trial court granted class certification under CR 23(a) and CR 23(b)(3).[6] The court specifically found

> that common questions of law and fact will predominate over any individual questions. The single common and overriding issue presented is whether Drivers and Messengers are allowed legally sufficient rest or meal breaks and whether Drivers and Messengers are entitled to compensation for missed meal periods and rest breaks. The claims of individual class members are likely valued at a few thousand dollars each and adjudicating the claims presented on a class basis will be manageable; Class adjudication of common issues is therefore superior.[7]

Garda argues that these findings are not adequate to support the trial court's finding that common questions predominated and a class action would be superior to individual actions. But, by finding that a single issue was "overriding," the trial court signaled that it had considered the individual issues and determined that that this one was common to all putative class members and would predominate. By naming the

---

[6] Garda does not appear to be challenging the trial court's findings related to CR 23(a).
[7] CP at 933.

specific issue, the court demonstrated that it had engaged in a critical examination of the issues. In addition, the court stated that it had "considered" the parties' motions, which thoroughly examined these issues.[8] We conclude that the trial court's findings were sufficient to show that a question common to the Plaintiffs predominated.

Additionally, the trial court estimated the value of each individual's claim and concluded that the action would be manageable as a class action. These findings, together with the court's findings that there were likely hundreds of class members and that a common question predominated, are adequate to show the court's reasons for determining that a class action was superior to individual actions.

The record also supports the trial court's decision to certify the class. The FAAAA and section 301 preemption issues are legal questions that are common to the whole class and do not require analyzing the different CBAs.[9] And, while individual branch managers may have treated individual class members differently, the summary judgment motion on liability relied on Garda's state-wide policies and the concessions by Garda's corporate designee, which applied to all class members.

Garda also argues that the trial court did not make adequate findings in response to its motion to decertify the class. It is true that the trial court's order addressing that motion simply recited the documents it considered and then denied the motion. But Garda cites no authority for its position that the trial court must offer new findings to support a decision not to decertify. The trial court's original findings were adequate to support its

---

[8] CP at 932.
[9] Garda argues that common questions do not predominate because the Plaintiffs' claims rely on at least three different CBAs and the acts of individual Garda employees. As will be discussed in more detail below, we do not need to interpret the various CBAs to resolve the Plaintiffs' claims. Therefore, the differences in the CBAs do not make the Plaintiffs' claims less susceptible to class adjudication.

decision to deny Garda's motion.

In short, the trial court did not abuse its discretion by certifying the class and declining to decertify the class.

### Garda's Summary Judgment Motions on Preemption

Garda argues that the trial court should have granted its motions for summary judgment on the grounds that the FAAAA and section 301 of the LMRA preempt the Plaintiffs' claims. We disagree.

Summary judgment is proper if, viewing the facts in the light most favorable to the nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Dowler v. Clover Park Sch. Dist. No. 400, 172 Wn.2d 471, 484, 258 P.3d 676 (2011); CR 56. We review summary judgment decisions de novo. Dowler, 172 Wn.2d at 484.

#### FAAAA Preemption

Garda argues that it was entitled to judgment as a matter of law because the FAAAA preempts the Plaintiffs' claims. Specifically, it argues that complying with Washington's meal and rest period requirements would have a significant impact on its prices, routes, and services. We hold that the FAAAA does not preempt the Plaintiffs' claims because, by obtaining a variance, Garda can comply with the meal and rest period rules without significantly impacting its operations.

Whether federal law preempts state law is a question of congressional intent. Dep't of Labor & Indus. of State of Wash. v. Common Carriers, Inc., 111 Wn.2d 586, 588, 762 P.2d 348 (1988). Federal law preempts state law when Congress has explicitly said so, when federal regulation of a field is so comprehensive that there is no room for state

action, or when there is an actual conflict between federal and state law. Common Carriers, 111 Wn.2d at 588. There is a strong presumption against federal preemption when a state acts within its historic police powers. Common Carriers, 111 Wn.2d at 588; Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252, 114 S. Ct. 2239, 129 L. Ed. 2d 203 (1994).

Preemption is an affirmative defense; the proponent of the defense bears the burden of establishing it. Dilts v. Penske Logistics, LLC, 769 F.3d 637, 649 (9th Cir. 2014). This court reviews preemption determinations de novo. Robertson v. State Liquor Control Bd., 102 Wn. App. 848, 853, 10 P.3d 1079 (2000).

The FAAAA forbids states from enacting or enforcing any law "related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). Congress passed the FAAAA in order to "eliminate non-uniform state regulations of motor carriers" and "'even the playing field' between air carriers and motor carriers." Californians for Safe & Competitive Dump Truck Transp. v. Mendonca, 152 F.3d 1184, 1187 (9th Cir. 1998) (quoting H.R. Conf. Rep. No. 103-677, at 86-88 (1994), reprinted in 1994 U.S.C.C.A.N. 1715, 1757, 1759).

Although "related to" expresses a broad preemptive purpose, there is no preemption "when a state statute's 'effect is no more than indirect, remote, and tenuous.'" Robertson, 102 Wn. App. at 854-55 (quoting Mendoca, 152 F.3d at 1189). While the FAAAA usually preempts laws that affect the way a carrier interacts with its customers, it often does not preempt laws that affect the way a carrier interacts with its workforce because they are "too tenuously connected to the carrier's relationship *with its customers*." Costello v. BeavEx, Inc., 810 F.3d 1045, 1054 (7th Cir. 2016). "[G]enerally

applicable background regulations that are several steps removed from prices, routes, or services, such as prevailing wage laws or safety regulations, are not preempted, even if employers must factor those provisions into their decisions about the prices that they set, the routes that they use, or the services that they provide." Dilts, 769 F.3d at 646.

In Dilts, the Ninth Circuit held that the FAAAA did not preempt California's meal and rest break laws. 769 F.3d at 647. California's meal and break laws require employers to provide a 30 minute meal break for employees who work more than five hours a day and a paid 10 minute rest period every four hours for employees who work at least three and one-half hours. Dilts, 769 F.3d at 641-42; Cal. Lab. Code § 512(a); Cal. Code Regs. Tit. 8, § 11090(12)(A). Under certain circumstances, employees may waive their meal breaks or agree to an on-duty meal break. Dilts, 769 F.3d at 641-42. If the employer fails to provide the required breaks, it must pay the employee "for an additional hour of work at the employee's regular rate." Dilts, 769 F.3d at 642.

The court held that the FAAAA did not preempt the claims of a class of delivery drivers and installers who asserted that their employers were not providing the required meal and rest breaks. Dilts, 769 F.3d at 640. It acknowledged that "motor carriers may have to take into account the meal and rest break requirements when allocating resources and scheduling routes," but held that these "normal background rules" did not have a significant enough impact on prices, routes, or services to warrant preemption. Dilts, 769 F.3d at 647. It also held that modest increases in the cost of doing business, including having to hire more drivers or having drivers take longer to complete certain routes, were not the kind of impacts that Congress intended to preempt. Dilts, 769 F.3d at 648-49.

Here, the Plaintiffs base their claims on Washington's meal period and rest break

laws, which closely resemble California's. Washington's specific rules are set out in Washington Administrative Code (WAC) 296-126-092:

> (1) Employees shall be allowed a meal period of at least thirty minutes which commences no less than two hours nor more than five hours from the beginning of the shift. Meal periods shall be on the employer's time when the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer.
> (2) No employee shall be required to work more than five consecutive hours without a meal period.
> . . . .
> (4) Employees shall be allowed a rest period of not less than ten minutes, on the employer's time, for each four hours of working time. Rest periods shall be scheduled as near as possible to the midpoint of the work period. No employee shall be required to work more than three hours without a rest period.
> (5) Where the nature of the work allows employees to take intermittent rest periods equivalent to ten minutes for each four hours worked, scheduled rest periods are not required.

The employees must be free from work duties, including the duty to be "'vigilant,'" during these breaks. Pellino v. Brink's Inc., 164 Wn. App. 668, 685-86, 690, 267 P.3d 383 (2011).

Washington's meal period and rest break regulations are generally applicable background laws that govern how all employers interact with their employees. They do not single out motor carriers or explicitly attempt to regulate prices, routes, or services. Nevertheless, Garda argues that the FAAAA preempts Washington's regulations in this case because Garda cannot comply with the regulations without having to significantly change its prices, routes, and services.

Due to the dangerous nature of their work, Garda employees must "remain on alert for possible threats," "even when taking a break."[10] They "cannot merely pull off the road

---

[10] CP at 1376.

to a parking space or rest stop to take a rest break."[11]  In order to provide completely vigilance-free breaks, Garda would have to dramatically change its routes to allow drivers to return to its secure facilities to take breaks every three hours.  It would also have to stop services completely for rural routes that cannot be completed in three hours.

Garda is correct that such significant impacts on its routes would likely warrant a finding of preemption under the FAAAA.  But implementing these changes is only one way that Garda could comply with Washington's meal and rest period regulations.  Garda also has the option to apply for a variance from Washington's Department of Labor and Industries (Department).

Washington law provides that employers may receive a variance from meal and rest break rules if the employer can show "good cause." RCW 49.12.105. "'Good cause' means, but is not limited to, those situations where the employer can justify the variance and can prove that the variance does not have a harmful effect on the health, safety, and welfare of the employees involved." WAC 296-126-130(4).  Garda's need for its employees to be alert at all times is based on ensuring the employees' personal safety and the safety of the valuables Garda employees transport.  These bases would likely qualify as good cause under the WAC provisions.[12]

At least one armored car company, Loomis, has already received a variance under

---

[11] CP at 1376.

[12] Garda argues that the state law regulation does not list "[a]voiding [FAAAA] preemption" as "good cause" for a variance.  Br. of Appellant at 15 n.69 (citing WAC 296-126-130(4)).  First, the regulation does not list any specific justifications.  The entire definition of "good cause" is quoted above.  Second, Garda could apply for a variance based on the significant impact of the meal period and rest break regulations on its opportunity to provide a safe working environment to its employees, not the potentially preemptive effect of the FAAAA.

13

RCW 49.12.105 and accompanying state regulations.[13] Under the variance, Loomis must provide rest periods to its employees, during which the employees "shall be relieved of all job duties and responsibilities, with the exception that during rest periods they shall continue to (a) remain attentive and vigilant regarding their personal safety and their immediate surroundings, (b) remain on call to respond to emergency circumstances, (c) comply with all [rules related to carrying firearms], (d) wear any uniform required by Loomis, and (e) carry any communication device required by Loomis."[14] Garda has not sought a similar variance.[15] Garda does not address whether complying with Washington law would have less of an impact on its operations if it received a variance.

Garda's FAAAA preemption argument assumes that the Plaintiffs' are correct that the law entitles them to "completely 'vigilance free'" rest breaks.[16] It does not argue that it would be impossible to provide appropriate breaks under the same type of variance Loomis received. Since Garda could obtain a variance to satisfy its need for employee vigilance, this case is nearly indistinguishable from Dilts.

Garda argues that "[t]he preemptive effect of [FAAAA] surely cannot be avoided simply because an employer might be able to obtain a variance."[17] Garda cites no authority for this position. If Washington law creates a problem for Garda, it is logical to

---

[13] Garda moved to strike the Plaintiffs' designated clerk's papers containing this variance. A commissioner of this court denied that motion but invited Garda to address the argument in its reply brief. Garda did not. We assume that the declarations and exhibits contained in those pages are properly before this court.

[14] CP at 4285.

[15] In its briefing below, Garda argued that a variance was not available because it "sought a variance as soon as it was suggested in the Pellino decision that armored car driver/messengers needed to be provided with 'vigilance free' meal and rest breaks" but "was told at the time" by the Department that "a variance likely would not be granted because there was ongoing litigation on the issue." CP at 2697. But Garda did not actually apply for a variance. On appeal, Garda does not argue that it sought a variance.

[16] Br. of Appellant at 13.

[17] Br. of Appellant at 15 n.69.

look to Washington law for a solution before finding federal preemption.

Accordingly, we conclude that the FAAAA does not preempt applicable Washington regulations governing meal periods and rest breaks. The impact of having to schedule routes with adequate time for meal periods and rest breaks would have only an indirect and remote impact on Garda's prices, routes, and services. As in Dilts, these impacts are not significant enough to warrant preemption.

Garda attempts to distinguish Dilts on the ground that, unlike in Washington, employers in California may simply pay extra money to avoid following the rule. That is not a correct statement of California law and was not a basis for the court's decision in Dilts. In fact, in Dilts, the court pointed out that employers did *not* have that option: "[S]ection 226.7 does not give employers a lawful choice between providing *either* meal and rest breaks *or* an additional hour of pay. . . . The failure to provide required meal and rest breaks is what triggers a violation of section 226.7." 769 F.3d at 642 (alteration in original) (quoting Kirby v. Immoos Fire Prot., Inc., 53 Cal. 4th 1244, 274 P.3d 1160, 1168 (2012)).

In short, the trial court did not err by holding that the FAAAA did not preempt the Plaintiffs' claims.

*Section 301 Preemption*

Next, Garda argues that the trial court erred by holding that section 301 of the LMRA did not preempt the Plaintiffs' claims because the claims are based on negotiable rights and require interpretation of the CBAs. The Plaintiffs respond that section 301 does not preempt their claims because they seek to enforce rights that exist independently from their CBAs. We agree with the Plaintiffs.

15

Through section 301 of the LMRA, Congress vested exclusive jurisdiction for violations of CBAs in the federal courts, in an attempt to establish "interpretive uniformity and predictability" in labor-contract disputes. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210-11, 105 S. Ct. 1904, 85 L. Ed 2d 206 (1985); Caterpillar Inc. v. Williams, 482 U.S. 386, 393-94, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987); 29 U.S.C. § 185(a). "Section 301 governs claims founded directly on rights created by [CBAs], and also claims 'substantially dependent on analysis of a [CBA].'" Caterpillar, 482 U.S. at 394 (quoting Int'l Bros. of Electrical Workers v. Hechler, 481 U.S. 851, 859 n.3, 107 S. Ct. 2161, 95 L. Ed. 2d 791 (1987)).

But section 301 preemption does not apply to every dispute between an employer and a union employee. "[I]t would be inconsistent with congressional intent under [section 301] to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." Allis-Chalmers, 471 U.S. at 212. "If the claim is plainly based on state law, [section] 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." Cramer v. Consol. Freightways, Inc., 255 F.3d 683, 691 (9th Cir. 2001) (en banc).

Section 301 does not "preempt nonnegotiable or independent negotiable claims." Commodore v. Univ. Mech. Contractors, Inc., 120 Wn.2d 120, 131, 839 P.2d 314 (1992). A state law claim is independent if it does not rely on a right created by a CBA. Commodore, 120 Wn.2d at 129. "A right is nonnegotiable if the state law does not permit it to be waived, alienated, or altered by private agreement." Miller v. AT&T Network Sys., 850 F.2d 543, 546 (9th Cir. 1988). A state law right may be nonnegotiable for certain classes of employees, even if the state does not provide that right to all employees. See

Valles v. Ivy Hill Corp., 410 F.3d 1071, 1081 (9th Cir. 2005).

In Miller, the Ninth Circuit set out a three-part test for determining whether section 301 preempts a claim:

> In deciding whether a state law is preempted under section 301, therefore, a court must consider: (1) whether the CBA contains provisions that govern the actions giving rise to a state claim, and if so, (2) whether the state has articulated a standard sufficiently clear that the state claim can be evaluated without considering the overlapping provisions of the CBA, and (3) whether the state has shown an intent not to allow its prohibition to be altered or removed by private contract.

850 F.2d at 548 (footnote omitted). Section 301 preempts the state law claim "only if the answer to the first question is 'yes,' and the answer to either the second or third is 'no.'" Miller, 850 F.2d at 548.

For example, in Ervin v. Columbia Distributing, Inc., section 301 did not preempt an employee's overtime claims, even though he was a party to a CBA with provisions governing overtime. 84 Wn. App. 882, 890, 930 P.2d 947 (1997). The court held that the overtime provisions were nonnegotiable rights and that it would need to examine the CBA only to determine the plaintiff's "regular rate of pay." Ervin, 84 Wn. App. at 890-91.

Here, the Plaintiffs alleged in their complaint that Garda's "policy and practice under which Plaintiffs and the class do not receive meal and rest breaks violates [chapter] 49.12 [RCW] and WAC 296-126-092."[18] Garda argues that the Plaintiffs' claims stem from negotiable rights, which they have waived in their CBAs. The Plaintiffs argue that Washington does not allow private employees in trades other than construction to waive their rights to a meal period in a CBA, so any alleged waivers in the CBAs are irrelevant

---

[18] CP at 7. Garda does not argue on appeal that section 301 preempts the Plaintiffs' rest period claims, presumably because employees may never waive those rights. But it did argue to the trial court that section 301 preempted the Plaintiffs' rest period claims.

to their claims.

Both parties argue that the Department's Administrative Policy No. ES.C.6 (the Policy), issued to interpret WAC 296-126-092, supports their position.[19] The Policy explains that individual employees may waive their meal periods:

**8. May an employee waive the meal period?**

Employees may choose to waive the meal period requirements. The regulation states employees "shall be allowed," and "no employee shall be required to work more than five hours without a meal period." The department interprets this to mean that an employer may not require more than five consecutive hours of work and must allow a 30-minute meal period when employees work five hours or longer.

If an employee wishes to waive that meal period, the employer may agree to it. The employee may at any time request the meal period. While it is not required, the department recommends obtaining a written request from the employee(s) who chooses to waive the meal period.

If, at some later date, the employee(s) wishes to receive a meal period, any agreement would no longer be in effect.[20]

Although the Policy allows a CBA covering public employees or employees in the construction trades to vary the rules regarding meal and rest periods, it does not extend that option to other CBAs:

**15. May a Collective Bargaining Agreement negotiate meal and rest periods that are different from those required by WAC 296-126-092?**

No. The requirements of RCW 49.12 and WAC 296-126-092, establish a minimum standard for working conditions for covered employees. Provisions of a collective bargaining agreement (CBA) covering specific requirements for meal and rest periods must be [at] least equal to or more favorable than the provisions of these standards, with the exception of public employees and construction employees covered by a CBA.[21]

---

[19] The agency's interpretation of these statutes and regulations is entitled to deference. See Pellino, 164 Wn. App. at 688.

[20] Wash. Dep't of Labor & Indus., Administrative Policy ES.C.6, § 8, at 4 (rev. June 24, 2005); CP at 1037.

[21] Administrative Policy ES.C.6, § 15, at 5; CP at 1038.

Garda contends that WAC 296-126-092's "minimum standard" allows employees to waive their meal periods. Therefore, the CBAs at issue here, which waive the meal periods for all employees, meet the "minimum standard." Thus, employees can waive their right to a meal period through a CBA.

We disagree. Garda's reading of the Policy is inconsistent with the emphasis the Policy places on an individual employee's choice whether to waive meal periods. An employee has the right to revoke a waiver at any time.[22] Waiving all employees' meal periods through a CBA would limit an individual employee's ability to revoke that waiver. Or, even if the CBA allowed employees to revoke that waiver, having the remainder of the workforce agree to a waiver could put pressure on individual employees not to revoke their waivers.[23]

The "minimum standard" is a 30-minute meal period. A waiver of that meal period is less than the standard. We hold that Washington does not allow most private employees to waive their right to a meal period through a CBA.

Therefore, the Plaintiffs' state right to meal periods is both independent and nonnegotiable, and there is no section 301 preemption. Washington law allows public and construction employees to waive this right, but the Plaintiffs here do not fall within those classes. We do not have to resolve the parties' disputes over the meaning of the meal period provisions in the CBAs in order to determine whether Garda provided the meal periods required under Washington law.

---

[22] Administrative Policy ES.C.6, § 8, at 4; CP at 1037.
[23] This analysis applies to CBAs generally, and is not meant to address the specific CBAs between the parties in this case. Those CBAs do allow employees to "request" meal periods from their supervisors or "notify" their supervisors that they want meal periods. See, e.g., CP at 390, 413, 433, 454, 478.

19

Garda argues that the Plaintiffs' interpretation of the regulation would violate the employees' right to collectively bargain under RCW 49.12.187 and implicate the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151-169, preemption, because it would discourage collective bargaining.[24] As the Plaintiffs point out, Garda is raising these arguments for the first time on appeal. We decline to consider these arguments. See RAP 2.5(a).

<u>Plaintiffs' Summary Judgment Motions on Liability</u>

Garda argues that the trial court erred by granting the Plaintiffs' motions for summary judgment on liability because material questions of fact remained whether individual Plaintiffs waived their meal periods and received adequate rest breaks. The Plaintiffs argue that the trial court properly disregarded evidence of waiver related to the CBAs and that Garda's state-wide policies show that it did not provide adequate rest breaks. We agree with the Plaintiffs.

*Meal Periods*

Garda argues that the Plaintiffs' acknowledgments of their CBAs, which purported to waive their rights to meal breaks, creates a genuine dispute of material fact whether individual Plaintiffs waived those rights. Because the Plaintiffs cannot waive meal breaks through their CBAs, evidence that the Plaintiffs acknowledged the CBAs or understood that they would not receive meal breaks under the CBAs is not evidence that they voluntarily waived this right. We affirm.

"A waiver is the intentional and voluntary relinquishment of a known right." <u>Jones</u>

---

[24] Specifically, Garda argues that <u>Garmon</u> preemption, named after <u>San Diego Building Trades Council v. Garmon</u>, 359 U.S. 236, 79 S. Ct. 773, 3 L. Ed. 2d 775 (1959), would bar the Plaintiffs' interpretation. Br. of Appellant at 19-20.

20

v. Best, 134 Wn.2d 232, 241, 950 P.2d 1 (1998). Knowledge of the existence of the right may be "actual or constructive." Bowman v. Webster, 44 Wn.2d 667, 669, 269 P.2d 960 (1954). A waiver may be express or implied. Jones, 134 Wn.2d at 241. But an implied waiver must be based on "unequivocal acts or conduct evidencing an intent to waive; waiver will not be inferred from doubtful or ambiguous factors." Jones, 134 Wn.2d at 241. The party asserting waiver bears the burden of proof. Jones, 134 Wn.2d at 241-42.

Here, Garda argues that there is a question of fact whether the Plaintiffs individually waived their right to meal periods under WAC 296-126-092(1) and (2). Garda notes that several CBAs contained waivers and that many class members signed acknowledgments of their CBAs.[25] Also, all three named Plaintiffs confirmed that they knew they had agreed to forego scheduled meal breaks through the CBAs.

A waiver in a CBA is not evidence of an individual plaintiff's choice. An individual worker may "vote against representation; but the majority rules." J.I. Case Co. v. Nat'l Labor Relations Bd., 321 U.S. 332, 339, 64 S. Ct. 576, 88 L. Ed. 2d 762 (1944). Likewise, in Ervin, the court held that an agreement with a plaintiff's union "*cannot* be viewed as an agreement with [the plaintiff] *individually*." 84 Wn. App. at 893 (first emphasis added).

We conclude that the trial court did not err by refusing to treat the waivers contained in the CBAs as evidence that individual Plaintiffs waived their rights. Garda offers no evidence of waiver independent of the CBAs and does not object to the trial court's decision to grant summary judgment on the subject of liability for meal periods on any other grounds. Therefore, the trial court did not err by granting summary judgment on this issue.

---

[25] "The Employees hereto waive any meal period(s) to which they would otherwise be entitled." CP at 1163, 601, 646.

21

<u>Rest Breaks</u>

Garda argues that the trial court erred by granting summary judgment on the issue of liability for rest breaks on the basis that the written vigilance policy established that Plaintiffs did not receive lawful rest breaks as a matter of law. The Plaintiffs respond that summary judgment was proper because Garda's own policies and testimony show that it did not provide legally sufficient rest breaks. We agree with the Plaintiffs.

A motion for summary judgment requires the court to view all evidence in the light most favorable to the nonmoving party. <u>Dowler</u>, 172 Wn.2d at 484; CR 56. This means the court will not weigh evidence or resolve issues of credibility. <u>Barker v. Advanced Silicon Materials, LLC</u>, 131 Wn. App. 616, 624, 128 P.3d 633 (2006). But there is no genuine issue of material fact where reasonable people could draw only one conclusion. <u>White v. Salvation Army</u>, 118 Wn. App. 272, 284, 75 P.3d 990 (2003).

Here, the Plaintiffs contend that the rest breaks they received were inadequate because they were not given enough time and were not completely relieved of duties. Washington requires employers to provide "a rest period of not less than ten minutes, on the employer's time, for each four hours of working time. . . . Where the nature of the work allows employees to take intermittent rest periods equivalent to ten minutes for each [four] hours worked, scheduled rest periods are not required." WAC 296-126-092(4), (5). The Department clarified that "[t]he term 'rest period' means to stop work duties, exertions, or activities for personal rest and relaxation."[26]

It is not enough for employers to allow employees to take breaks, rather "employers must affirmatively promote meaningful break time." <u>Demetrio v. Sakuma</u>

---

[26] Administrative Policy ES.C.6, § 10, at 4; CP at 1037.

Bros. Farms, Inc., 183 Wn.2d 649, 658, 355 P.3d 258 (2015). If a workplace culture "encourages employees to skip breaks" it violates the regulation. Demetrio, 183 Wn.2d at 658. Courts must look at "the purposes rest breaks serve in light of how rest breaks were used (or not) by the employees in context." Demetrio, 183 Wn.2d at 658.

In Pellino, the court ruled that drivers and messengers of armored vehicles did not receive "true breaks" because of their employer's "'rules requiring constant guarding and vigilance.'" 164 Wn. App. at 687, 690-91. The rules required employees to always "'be alert'" and "'look alert,'" to "'continuously observe their surroundings,'" and be "'constantly suspicious.'" Pellino, 164 Wn. App. at 674-75. The security rules explicitly applied to employees' break periods. Pellino, 164 Wn. App. at 674. The employer also did not give them sufficient time to take breaks. Pellino, 164 Wn. App. at 690-91, 94.

By contrast, in White, the court held that employees who were "on call" during their breaks still received adequate rest periods. 118 Wn. App. at 283-84. There, the employees were able to "eat, rest, make personal telephone calls, attend to personal business that would not take them away from the facility, and close the door to the office in order to make themselves unavailable." White, 118 Wn. App. at 283-84.

Here, Garda's corporate witness, designated under CR 30(b)(6), conceded that Garda could not provide vigilance-free breaks due to the nature of the job performed by its employees. Two Garda publications, in use at all Washington branches, explain Garda's vigilance requirement: Garda's "Employee Handbook For Driver/Messengers and Vault Employees" and its "Operations Book Of Rules." In the handbook's section on "Operations and Security," it instructs employees to "remain alert at all times for the success of [Garda's] operations. Look alert and be alert. Don't take anything for

granted."[27]  "Be alert at all times."[28]  It warns crews not to "make route or schedule changes or deviate from their scheduled routes for any reason without current authorization from management."[29]

The handbook also prohibits employees from conducting personal business while on duty.  Employees may not bring any reading materials with them in the truck.  The handbook also instructs employees that "[c]ell phone, pager, and two-way transmission devices are prohibited on all company armored vehicles or in company armored or money room/case processing facilities" without "specific supervisor approval for very limited use as to time and scope."[30]  The "Operations Book Of Rules" has similar prohibitions.[31]

Garda's corporate witness stated that employees routinely broke these policies, but agreed that these policies remained in effect.  Two Garda branch managers testified that they did not discipline their employees for having their cell phones or personal reading materials on the trucks.  Those managers did not testify that they altered Garda's polices or authorized their employees to have personal items with them.

We hold that Garda violated the rest period regulations because its official policies do not promote opportunities for meaningful breaks.  The Plaintiffs had to remain vigilant and were not free to conduct personal business.  Although Garda's rules are not as extreme as those at issue in Pellino, Garda's requirement of vigilance is much more involved than simply being on call, as the employees were in White.  Garda conceded in

---

[27] CP at 2776.
[28] CP at 2777.
[29] CP at 2777.
[30] CP at 3031. On the same page of the handbook, Garda authorizes employees to use their cell phones during breaks and meal periods, but the breaks at issue here would have had to occur while the employees were in their trucks, and the rules are clear that Garda employees may not bring their cell phones with them on the trucks.
[31] CP at 2772-73.

24

its briefing below "that it cannot provide breaks *completely free of any need* to exercise vigilance."[32] Moreover, Garda's state-wide policies strongly restrict the Plaintiffs' ability to relax or take care of personal business during their breaks.

Garda argues that the trial court erred by weighing the written policies more strongly than other evidence. For example, Garda presented evidence that its managers did not always enforce the rules and that many employees violated the rules.[33] But, if employees may take meaningful breaks only by violating the company's official policies, Garda has still created a culture that discourages meaningful breaks.

Garda also does not contradict its own representative's concession that Garda did not provide vigilance-free breaks. Therefore, the court did not have to weigh evidence when it determined that Garda deprived the Plaintiffs of meaningful breaks. The trial court did not err by granting the Plaintiffs' motion for summary judgment on rest periods.

On appeal, Garda also relies on its employees' declarations that they had adequate rest breaks, during which they were able to "stop [their] work duties" and make "personal choices about how [they] spend [their] time."[34] We do not consider these declarations because Garda did not call them to the trial court's attention for this motion.[35] They were filed nearly five years earlier to support Garda's opposition to the Plaintiffs' motion to certify the class.[36] Because the appellate court engages in the same inquiry as

---

[32] CP at 2994.

[33] Individual class members testified they took breaks for smoking, using the restroom, getting food, and sending text messages via their personal cell phones. Cell phone records and social media records confirm that many class members used their cell phones while on the trucks.

[34] CP at 768; see also CP at 771, 774, 777, 780, 783, 786, 817, 820, 823, 826, 829, 832, 835, 838.

[35] CP at 2989-3008.

[36] Garda filed its opposition to the Plaintiffs' motion for class certification in July 2010. Garda filed its opposition to the Plaintiffs' motion for partial summary judgment in May 2015.

the trial court, it "'will consider only evidence and issues called to the attention of the trial court.'" Mithoug v. Apollo Radio of Spokane, 128 Wn.2d 460, 462, 909 P.2d 291 (1996) (emphasis omitted) (internal quotations marks omitted) (quoting RAP 9.12).

<u>Double Damages</u>

The trial court awarded the Plaintiffs double damages under RCW 49.52.070. Garda argues that the trial court erred because it awarded double damages for Garda's failure to provide meal periods, which is a labor violation, not a wage violation.[37] Garda also argues that its actions were not willful and that the Plaintiffs knowingly submitted to Garda's meal period arrangement.

RCW 49.52.070 authorizes employees to recover double damages when their employers have willfully withheld their wages:

> Any employer and any officer, vice principal or agent of any employer who shall violate any of the provisions of RCW 49.52.050 (1) and (2) shall be liable in a civil action by the aggrieved employee or his or her assignee to judgment for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees: PROVIDED, HOWEVER, That the benefits of this section shall not be available to any employee who has knowingly submitted to such violations.

We hold that violating the meal period requirement is a wage violation, but that Garda did not willfully violate the requirement.

*Wage Violations*

First, Garda argues that, because the Plaintiffs were paid for all the time they worked, a failure to provide them with meal periods is not a wage violation. The Plaintiffs argue that Washington treats a failure to provide meal periods as withholding wages. We

---

[37] Garda does not challenge the trial court's award of double damages for its violation of the rest break requirements.

agree with the Plaintiffs.

Any employer who "[w]illfully and with intent to deprive the employee of any part of his or her wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract" has committed a wage violation under RCW 49.52.050(2). The statute does not define "wage," but "another related wage statute, the Minimum Wage Act, chapter 49.46 RCW, broadly defines 'wage' as 'compensation due to an employee by reason of employment.'" LaCoursiere v. Camwest Dev., Inc., 181 Wn.2d 734, 742, 339 P.3d 963 (2014) (quoting RCW 49.46.010(7)). This court construes the statute liberally in order to "protect employee wages and assure payment." Schilling v. Radio Holdings, Inc., 136 Wn.2d 152, 159, 961 P.2d 371 (1998).

In Wingert v. Yellow Freight Systems, Inc., the court held that an employer's failure to provide its employees with rest periods was a wage violation. 104 Wn. App. 583, 588, 13 P.3d 677 (2000). There, an employer failed to provide its employees with sufficient rest periods when they worked overtime. Wingert, 104 Wn. App. at 586, 588. The court held that the employees could recover payment for the breaks they should have received, even though the employer paid its workers for every minute they worked. Wingert, 104 Wn. App. at 588-90.

The court rejected the employer's argument that "failure to allow rest periods results in lost rest time, not lost wages." Wingert, 104 Wn. App. at 589. It held that a contrary holding would leave the "employees with no remedy for their employer's violation of WAC 296-126-092(4)" and would "unjustly enrich[]" the employer, who would have received extra work from its employees. Wingert, 104 Wn. App. at 590-91.

27

Here, Garda's failure to provide meal breaks violated WAC 296-126-092(1) and (2). Unlike rest breaks, which must always be on the employer's time, not all meal periods are paid. WAC 296-126-092(1), (4). Garda argues that, because the law does not guarantee a paid meal period, the failure to provide a meal period is a labor violation, not a wage violation. It claims that the court made this distinction in Iverson v. Snohomish County, 117 Wn. App. 618, 623, 72 P.3d 772 (2003). But, there, the court did not award damages because it concluded that the plaintiff did not prove his employer had violated WAC 296-126-092. Iverson, 117 Wn. App. at 623. The court did not address what remedy would have been appropriate if there had been a violation.

We hold that treating violations of meal period requirements as wage violations is consistent with Wingert. The Plaintiffs here were paid for every minute they worked, but they were deprived of opportunities to rest. If this court does not treat this as a wage violation, it is unclear what recourse the Plaintiffs would have.[38] Moreover, Garda undoubtedly benefitted from the lack of meal periods. For example, Garda's crews would be able to finish routes more quickly. For those reasons, and given that the court must construe the statute liberally, we conclude that Garda's failure to provide meal periods is a wage violation.

*Willfulness*

Garda argues that, if its conduct amounts to a wage violation, it was not willful because there was a bona fide dispute over whether it was obligated to provide the

---

[38] Garda acknowledges that, in Pellino, the court awarded the employees "the equivalent of 30-minutes of pay as damages for the meal period violation." Br. of Appellant at 39, n.175; see Pellino, 164 Wn. App. at 689, 699. Garda characterizes this as damages for a labor violation. The appellate decision in Pellino does not specify what compensation the employees received or how the court characterized the violation.

Plaintiffs with meal periods. We agree.

A failure to pay owed wages is not willful when there is a bona fide dispute over whether the employer owes the wages. Schilling, 136 Wn.2d at 160. The employer bears the burden of showing that a bona fide dispute exists. Wash. State Nurses Ass'n v. Sacred Heart Med. Ctr., 175 Wn.2d 822, 834, 287 P.3d 516 (2012). "Generally, an employer who follows the provisions of a CBA 'with respect to overtime wages and compensatory time' does not willfully deprive employees of wages or salary." Sacred Heart, 175 Wn.2d at 835 (quoting Champagne v. Thurston County, 163 Wn.2d 69, 82, 178 P.3d 936 (2008)).

"Determining willfulness is a question of fact reviewed for substantial evidence." Backman v. Nw. Publ'g Ctr., 147 Wn. App. 791, 796, 197 P.3d 1187 (2008). "Substantial evidence is a sufficient quantum of evidence to persuade a fair-minded person of the truth of the declared premise." Chelius v. Questar Microsystems, Inc., 107 Wn. App. 678, 682, 27 P.3d 681 (2001).

Here, the trial court awarded double damages for the period between November 20, 2011, and February 7, 2015. Garda assigns error to the trial court's findings of fact on whether Garda's withholding was willful. The trial court held that, after the appellate decision in Pellino, "Garda knew or should have known that requiring constant alertness by its armored truck crews and failure to provide sufficient time for breaks violated the Washington Industrial Welfare Act and its implementing regulations."[39]

The court also found that Garda's affirmative defenses did not create bona fide disputes:

Garda's affirmative defenses to double damages did not create a "bona fide

---

[39] CP at 3811.

dispute" over its liability for failing to provide lawful breaks after *Pellino*. Garda did not show that it considered and "genuinely believed" in the FAAAA defense to [P]laintiffs' claims prior to fall 2014. By that time the law was clear that the FAAAA did not preempt state meal and rest break rules. The law was clear that meal breaks could not be waived in a Collective Bargaining Agreement (CBA) outside of public employment and construction trades, and the law was clear that statutory wage claims were not preempted by the LMRA.[40]

We conclude that Garda's waiver-related affirmative defenses are unavailing, but the law is not as clear on these issues as the trial court suggested. We review the legal conclusions in this finding of fact de novo. See Willener v. Sweeting, 107 Wn.2d 388, 394, 730 P.2d 45 (1986).

Garda has clearly relied throughout on the purported meal period waivers in the CBAs. The trial court concluded that the law was clear that private employees outside the construction trades could not waive their meal periods through a CBA. While we agree that the Plaintiffs cannot waive their meal periods via a CBA, the state of the law was not clear. No case cited by either party squarely addressed the issue. Garda's interpretation of the Policy on this point was not unreasonable. We conclude that there was a bona fide dispute as to whether the Plaintiffs could waive their meal periods through the CBAs, and, therefore, that Garda did not willfully withhold wages for meal periods.

We do not take the further step, taken by the trial court, to determine whether the purported waivers were actually waivers. The trial court concluded that the CBAs "did not generally waive meal breaks but instead provided for 'on-duty' meal breaks, which are still meal breaks requiring complete relief from active work under Washington law."[41] We do not attempt to determine whether the CBAs contained waivers. Garda's reliance on

---

[40] CP at 3811.
[41] CP at 3818.

the purported waivers is sufficient to show its withholding was not willful.

Because we conclude that a bona fide dispute existed about the requirement to provide meal periods, we do not need to determine whether Garda's FAAAA defense created a bona fide dispute or whether the Plaintiffs knowingly submitted to Garda's practice.

### Prejudgment Interest

Garda contends that the trial court erred by awarding both double damages and prejudgment interest because both compensate the Plaintiffs for harm due to a delayed payment. The Plaintiffs argue that the purposes of the awards are different enough to support both. We agree with Garda.

Courts consider judgments for back wages to be liquidated and thus will award prejudgment interest for back wages. Stevens v. Brink's Home Sec., Inc., 162 Wn.2d 42, 50-51, 169 P.3d 473 (2007). But courts will not allow prejudgment interest when the plaintiff seeks damages under a punitive statute. Ventoza v. Anderson, 14 Wn. App. 882, 897, 545 P.2d 1219 (1976). If a plaintiff sues under a punitive statute, the court will not grant interest on "either the compensatory or the punitive portion of the award." Ventoza, 14 Wn. App. at 897.

Washington's wage violation statutes are silent on the issue of prejudgment interest. Title 49 RCW. But case law shows that double damages are punitive in nature. Morgan v Kingen, 141 Wn. App. 143, 161-62, 169 P.3d 487 (2007) (holding that damages under the statute are "intended to punish and deter blameworthy conduct"), aff'd, 166 Wn.2d 526, 210 P.3d 995 (2009). Thus, under Ventoza, an award of prejudgment interest

31

is inappropriate when the court awards double damages.[42]

It does not appear that any published Washington cases have examined whether plaintiffs can recover both double damages and prejudgment interest under Washington's wage laws. Garda says prejudgment interest should not be available, relying on the fact that plaintiffs who recover under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201-219, may not recover prejudgment interest. Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 715, 6 S. Ct. 895, 89 L. Ed. 1296 (1945). But the Plaintiffs point out that the FLSA, although similarly allowing double damages, is distinguishable because it does not require a finding of willfulness. See Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1103 (3d Cir. 1995) (holding that both double damages and prejudgment interest are appropriate under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634, and distinguishing the FLSA on the basis that it does not have a willfulness component). We conclude that, on this issue, cases interpreting the FLSA and other federal labor and employment laws do not shed much light. Accordingly, we rely on this court's opinion in Ventoza. Although the underlying cause of action in that case related to trespass to timber, rather than employment, the court's holding that "[i]nterest is generally disallowed when recourse upon a punitive statute is sought" was not limited to timber claims. Ventoza, 14 Wn. App. at 897.

---

[42] Arguably, under Ventoza, an award of prejudgment interest is inappropriate when a plaintiff seeks an award of double damages under the statute, regardless of whether the court in fact awards double damages. But, since Ventoza, our Supreme Court has allowed prejudgment interest for an award based on failure to pay wages when a party unsuccessfully sought double damages for that same award. Bostain v. Food Exp., Inc., 159 Wn.2d 700, 723, 153 P.3d 846 (2007). Moreover, Garda does not appear to be arguing that the Plaintiffs may not recover any prejudgment interest because they sought double damages. For example, when arguing that the trial court allowed the Plaintiffs a "double recovery" by awarding them prejudgment interest "on top of punitive damages," Garda said, "If no double damages are awarded, then prejudgment interest is appropriate only on any award that is affirmed." Br. of Appellant at 3, 45.

We conclude that the trial court erred by awarding prejudgment interest when the Plaintiffs had recovered double damages under RCW 49.52.070.

### Attorney Fees at Trial

The trial court awarded attorney fees at trial pursuant to Washington's wage laws, RCW 49.46.090, RCW 49.48.030, and RCW 49.52.070.[43] The trial court also applied a 1.5 lodestar multiplier to the Plaintiffs' attorney fee award.

Garda argues that the trial court abused its discretion by granting the Plaintiffs' request for a lodestar multiplier because the case was insufficiently risky to warrant one. We hold that the contingent nature of the case and the uncertain chance of success, as determined at the outset of litigation, justify the multiplier. The trial court did not err.

Trial courts use the lodestar method to calculate the proper attorney fee award in wage violation cases. Fiore v. PPG Indus., Inc., 169 Wn. App. 325, 351, 279 P.3d 972 (2012). To determine the lodestar, the court multiplies the number of hours reasonably spent on the case by a reasonable hourly rate. Bowers v Transamerica Title Ins. Co., 100 Wn.2d 581, 593-94, 675 P.2d 193 (1983). The court will sometimes adjust the lodestar to reflect factors that are not taken into account when calculating the lodestar, such as the contingent nature of the work or the skill of the legal representation. Bowers, 100 Wn.2d at 593-94. These adjustments are called multipliers. See Bowers, 100 Wn.2d at 583.

To determine whether the prevailing party deserves a multiplier based on the contingent nature of the work, the court "must assess the likelihood of success at the

---

[43] Garda again argues that the Plaintiffs are not entitled to attorney fees under these statutes for the meal period violations because they are not wage violations. As discussed earlier in this opinion, the meal period violations are wage violations. Accordingly, the Plaintiffs may recover attorney fees incurred pursuing their meal period claims.

33

outset of litigation." Bowers, 100 Wn.2d at 598. Contingent-fee multipliers are only appropriate when attorneys are working on a contingency fee basis, because otherwise the attorneys will be entitled to fees regardless of the outcome of the litigation. Bowers, 100 Wn.2d at 598-99.

The Court of Appeals, Division One, reversed the grant of a multiplier on an attorney fee award in Fiore after it determined that the trial court had relied on an irrelevant factor. 169 Wn. App. at 330-31. There, the plaintiff sought a trial de novo after an unfavorable arbitration decision. Fiore, 169 Wn. App. at 332. By statute, a party who seeks a trial de novo after mandatory arbitration and does not improve their position has to pay the opposing party's reasonable attorney fees. Fiore, 169 Wn. App. at 356 n.1 (quoting MAR 7.3). The plaintiff prevailed at the trial de novo, and the trial court awarded a multiplier based on the contingent nature of the plaintiff's attorney fees, the fact that the opposing party had hired very skilled attorneys from firms across the country, and the risk that the plaintiff might have had to pay the opposing party's attorney fees. Fiore, 169 Wn. App. at 356.

The Court of Appeals reversed the multiplier. Fiore, 169 Wn. App. at 357. It held the case was "a straightforward wage and hour case" and not high risk because it "did not require the pursuit of risky trial strategies or present novel problems of proof." Fiore, 169 Wn. App. at 357. It also held that, even though the attorneys' payment was on a contingency basis, it was the "'least risky'" type of contingent fee cases because liability and damages were resolved on summary judgment, the plaintiff sought damages under a statute that provided for attorney fees, and the defendant was "a large, solvent corporation." Fiore, 169 Wn. App. at 358 n.20. It concluded that the lodestar already

reflected the difficult nature of the case because it was based on how many hours the attorneys would have to work. <u>Fiore</u>, 169 Wn. App. at 357-58.

The court also held that the risk of paying the opposing party's attorney fees after a trial de novo reflected a legislative preference for discouraging appeals from arbitration decisions. <u>Fiore</u>, 169 Wn. App. at 358. Applying a multiplier based on the risk of having to pay the opposing party's fees might actually encourage parties who lost at arbitration to seek a trial de novo, the opposite of the legislature's intent. <u>Fiore</u>, 169 Wn. App. at 358. Accordingly, the court held it was not a valid basis for an award of attorney fees. <u>Fiore</u>, 169 Wn. App. at 358.

An appellate court reviews a trial court's decision to award a multiplier for an abuse of discretion. <u>Bowers</u>, 100 Wn.2d at 599. A trial court abuses its discretion when it takes irrelevant factors into account in making a lodestar adjustment. <u>Chuong Van Pham v. Seattle City Light</u>, 159 Wn.2d 527, 543, 151 P.3d 976 (2007).

Here, the trial court found that a 1.5 multiplier was appropriate because the Plaintiffs' attorneys were working on a contingency basis and the case presented a high level of risk. This is the type of risk contemplated in both <u>Bowers</u> and <u>Pham</u> and distinguishable from <u>Fiore</u>. First, the trial court here relied exclusively on the risk that the Plaintiffs' attorneys undertook. It did not consider the skill of opposing counsel or irrelevant factors like the plaintiff's risk in a trial de novo. Second, this was not a straightforward case. It presented novel issues about the character of legally-sufficient rest breaks, not merely whether breaks were provided. Finally, success was very risky at the *outset* of litigation, because neither <u>Dilts</u> nor <u>Pellino</u> had been decided. The trial court did not abuse its discretion.

35

Garda relies on Morgan v. Kingen for its argument that the court's lodestar multiplier was unreasonable. 166 Wn.2d 526, 539-40, 210 P.3d 995 (2009), as corrected (Nov. 9, 2009). That case is distinguishable. There, the Supreme Court held that a trial court had not abused its discretion by denying successful plaintiffs a multiplier. Morgan, 166 Wn.2d at 539-40. For reasons similar to those considered by the Court of Appeals in Fiore, the trial court determined that the risk did not warrant a multiplier. Morgan, 166 Wn.2d at 539. The Supreme Court held that the trial court had clearly considered the risk at the outset of litigation and had not abused its discretion. Morgan, 166 Wn.2d at 540. But a determination that the trial court did not abuse its discretion when it denied a request for a multiplier is not equal to a determination that the trial court would have abused its discretion if it had granted the request. Morgan is not controlling.

In sum, the trial court did not abuse its discretion by applying a multiplier based on the specific risks presented at the outset of this case.

### Attorney Fees on Appeal

The Plaintiffs request attorney fees on appeal pursuant to RCW 49.48.030, RCW 49.52.070, and RCW 49.46.090(1). These statutes provide for an award of attorney fees for employees who successfully recover wages owed to them. The Plaintiffs have prevailed on this appeal and, therefore, are entitled to attorney fees on the same basis for which they received attorney fees below.

### CONCLUSION

We affirm the trial court's class certification and summary judgment decisions, but reverse its award of double damages on meal period violations. We also reverse the award of prejudgment interest on the rest break damages, but not on the meal period

violations. We remand for a new calculation of damages.

_Trickey, ACJ_

WE CONCUR:

_Spearman, J._     _Schindler, J_