# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| RHEANNON ANDROCKITIS, individually and on behalf of all persons similarly situated,<br><br>               Respondents,<br><br>             v.<br><br>VIRGINIA MASON MEDICAL CENTER, a Washington corporation,<br><br>               Appellant. | DIVISION ONE<br><br>No. 85502-6-I<br><br>PUBLISHED OPINION |

DWYER, J. — Under the well-established law of our state, employees covered by the "Industrial Welfare Act"[1] have a right to the respite of a meal and rest period, an implied cause of action to enforce that right, and a remedy to compensate them for the loss of the statutorily granted opportunity to have respite from work. This is in addition to the Washington Minimum Wage Act[2] right of all employees to be compensated for their hours worked, including when their employers require them to work during meal and rest periods. On appeal, Virginia Mason Medical Center presents us with various assertions to the contrary. All of those assertions fail. Virginia Mason also challenges the "Wage Rebate Act"[3] and prejudgment interest summary judgment rulings rendered herein. These challenges also fail. Accordingly, we affirm.

---

[1] Ch. 49.12 RCW.
[2] Ch. 49.46 RCW.
[3] Ch. 49.52 RCW.

I

During the time in question, Rheannon Androckitis was one of Virginia Mason's numerous hourly employees, which included customer service representatives, surgery schedulers, medical assistants, and nurses.  During this time, Virginia Mason had several policies regarding both those employees' meal and rest periods and the manner in which they could request compensation when Virginia Mason's patient workload caused them to work, rather than relax, during their meal and rest periods.

Virginia Mason's meal period policy for those employees was that they would be provided an unpaid 30-minute meal period when they worked a shift lasting at least five hours.  Virginia Mason's timekeeping system, for its part, presumed that such employees received a 30-minute meal period during their shift and automatically deducted 30 minutes from their total reported shift time.

In the event that Virginia Mason's patient workload caused employees to work, rather than relax, during their 30-minute unpaid meal period, the employees could cancel the automatic 30-minute deduction.  To do so, they would need to use the interface of Virginia Mason's timekeeping system at the end of their shift to indicate that they had a "missed meal break."  In such a situation, the timekeeping system was intended to be designed to automatically add 30 minutes back into their total time worked for that shift to account for their time spent working during that unpaid meal period.

As pertinent here, Virginia Mason did not have a policy of providing those employees who worked during a 30-minute meal period either with an

2

opportunity to receive a 30-minute respite later in their shift or with compensation for the loss of the opportunity to receive such a respite during their shift.

Virginia Mason's rest period policy for those employees was that they would be provided a paid 15-minute rest period for every four hours that they worked in a given shift. Accordingly, Virginia Mason's timekeeping system presumed that those employees were relaxing, rather than working, during their paid rest periods and did not automatically deduct any time from their reported work time at the end of their shift.

In the event that the medical center's workload caused employees to work, rather than relax, during a paid rest period, the employees could indicate at the end of their shift that they had a "missed rest break" using the same timekeeping interface as described above. When an employee indicated that the employee had a "missed rest break," the timekeeping system did not automatically compensate that employee. Rather, Virginia Mason's policy was intended to be designed so that the employee's manager would be notified, the manager would manually approve or deny the reported missed paid rest period, and, if approved, the employee would be compensated for that "missed rest period."[4]

In March 2020, Androckitis filed a class action complaint against Virginia Mason alleging violations of the Industrial Welfare Act, the Washington Minimum Wage Act, and the Wage Rebate Act. In so doing, Androckitis asserted that the

---

[4] It was not Virginia Mason's policy to provide those employees who reported a "missed rest period" with another opportunity to receive a rest period free from work or exertion during that shift.

3

medical center was liable for failing to properly compensate her and the putative

class members both for their hours worked during meal periods and for denying

them the respite of a meal period.  Androckitis also contended that Virginia

Mason was liable for failing to properly compensate them for not having the

respite of a rest period.  Androckitis further averred that Virginia Mason's failure

to so compensate her and the putative class members constituted willful wage

violations.  Androckitis requested that the court award them, among else,

damages, lost wages, exemplary damages, and prejudgment interest.

In May 2021, Androckitis filed a motion for class certification.  As pertinent

here, in a declaration submitted in support of Virginia Mason's opposition to class

certification, the medical center's payroll director declared that

> Virginia Mason is in the final stages of processing and making
> retroactive payments to all putative class members (both current
> and former employees) who recorded a missed rest break and was
> not previously paid for the missed time.  Virginia Mason will issue
> direct deposit payments to active employees and paper checks to
> those who are no longer employed with the organization as of the
> payment date.  Virginia Mason anticipates making the payments to
> the current and former employees no later than May 28, 2021.

The resulting correspondence stated that Virginia Mason would be paying

qualifying employees an amount equal to one rest period for each day that such

employee indicated that they had a "missed rest break" and for which the

payment remained outstanding.  On May 28, 2021, Virginia Mason ultimately

issued a one-time payment totaling $345,833.44 paid in varying amounts to

4

those current and former employees who reported having not received

compensation for working during a rest period.[5]

In June 2021, the trial court granted Androckitis's motion, certifying the

class in this matter as follows:

> All hourly paid employees of Defendant Virginia Mason Medical
> Center who reported a missed rest or meal break in Defendant's
> Kronos timekeeping system between March 24, 2017 and January
> 25, 2020.

The trial court found and concluded that

> [t]he declarations submitted by the parties indicate that anywhere
> from approximately 6,100 to 8,400 employees reported missed rest
> or meal breaks during the putative class period. . . .
>       . . . [A]ll class members, regardless of job title or operating
> unit, utilized the same Kronos timekeeping system and were
> subject to the same policies and practices with respect to
> compensation for missed rest and meal periods reported in that
> system.  Common questions include whether class members have
> received all compensation due under the law when they reported
> missed rest and meal breaks, including, but not limited to, whether
> class members are entitled to an extra thirty (30) minutes of
> compensation when reporting a missed unpaid meal period and, if
> so, whether that compensation needs to be paid at overtime rates
> under certain circumstances. . . .  Virginia Mason's timekeeping
> system is apparently replete with missed breaks reported by
> thousands of employees across job titles and units and . . . Virginia
> Mason is currently relying on that data to provide retroactive
> compensation to workers for reported missed rest breaks.

---

[5] Virginia Mason's correspondence to the putative class members also included a claim
form through which a recipient of the letter could claim additional missed rest breaks or meal
periods.

> If you missed more than one rest break on the days for which we paid you a
> missed rest break, please indicate so on the enclosed Claim Form.  If there are
> other days which you missed a meal or rest break, please also indicate that on
> the Claim Form.  If there is any other time for which you worked for Virginia
> Mason and were not paid, please also indicate that on the Claim Form.

The record in this matter does not reflect that Virginia Mason sent additional sums for missed rest
periods or meal periods in response to current or former employees' claims, if any, for such
funds.

Thereafter, Virginia Mason filed a motion for summary judgment. As pertinent here, Virginia Mason presented four arguments: (1) it was not liable for failing to pay its employees for their hours worked during meal periods; (2) the plaintiffs did not have a statutory right to compensation for being deprived of the respite of a meal period, (3) its one-time payment to the plaintiffs for working through rest periods mooted any controversy arising from their rest period compensation claim; and (4) it had a bona fide dispute as to whether it owed compensation to the plaintiffs.

Also around this time, Androckitis, on behalf of the class member plaintiffs, filed a motion for partial summary judgment on certain of Virginia Mason's liabilities as alleged in her complaint. In her briefing in support of that motion, the plaintiffs argued (1) that Virginia Mason owed the class members compensation for depriving them of their right to a 30-minute meal period to be free from work, (2) that Virginia Mason's refusal to provide such compensation was willful, (3) that Virginia Mason's delay in sending compensation for "missed rest breaks" was willful, and (4) that Virginia Mason owed the plaintiffs prejudgment interest for their lost use of the compensation associated with their "missed rest breaks." Virginia Mason opposed the motion on similar bases as set forth in its own summary judgment motion and further argued that summary judgment should not be granted to the plaintiffs because they might have elected to waive their right to compensation to meal periods.

At a hearing on the parties' summary judgment motions, the trial court asked Virginia Mason's legal counsel whether any genuine issues of material fact

remained.  Virginia Mason's counsel assured the trial court that "the only factual issue that I potentially see here, Your Honor, is the issue of waiver and whether or not, you know, people individually on a day-by-day, case-by-case basis waived a meal period."[6]

The trial court granted the plaintiffs' motion for partial summary judgment and denied Virginia Mason's motion for summary judgment.  The court ruled as follows:

>     1. Virginia Mason owes an additional 30 minutes of compensation to Class Members for missed meal breaks, in addition to paying them for all the time worked (compensatory damages);
>     2. Virginia Mason's refusal to pay Class Members an additional 30 minutes of compensation for missed meal breaks was willful and not reasonably debatable under RCW 49.52.050 and .070, entitling Class Members to double damages on that claim.
>     3. Virginia Mason owes prejudgment interest to Class Members on the compensation owed for missed rest breaks, even if the retroactive payments issued on May 28, 2021 covered the back wages owed for those breaks; and
>     4. Virginia Mason's failure to provide additional compensation for all missed rest breaks was willful under RCW 49.52.050 and .070, because Virginia Mason unreasonably delayed paying retroactive compensation once it learned of the gaps and deficiencies in its system.

In June 2023, Virginia Mason and the plaintiffs, "for purposes of foregoing a trial on damages and in order to position the case for appeal," reached a stipulated judgment that set forth a finding that Virginia Mason would owe $3,337,672, plus postjudgment interest, in damages, in the event that the trial

---

[6] When asked the same question by the trial court, the plaintiffs' counsel indicated that "I do not believe there are any factual issues that need to be resolved."

court's determinations regarding Virginia Mason's liability were affirmed on appeal.

Virginia Mason now appeals.

II

Virginia Mason first asserts that the superior court erred in its summary judgment orders by concluding that the plaintiffs were entitled to compensation on a theory that an Industrial Welfare Act regulation granted certain employees the right to have the respite of a 30-minute meal period and that Virginia Mason had deprived them of that right. Virginia Mason's assertion fails.

Three predicates underlie Virginia Mason's assertion: (1) the Industrial Welfare Act regulation in question did not grant employees covered by that act a right to have the respite of a 30-minute meal period; (2) the regulation, even if it did grant such a right, did not grant those employees a remedy distinct from their right to be compensated for their hours worked; and (3) the trial court's selection of a remedy of 30 minutes of compensation in light of Virginia Mason's deprivation of the right to have the respite of a meal period was not an appropriate remedy. As discussed, infra, all three predicates fail.

Instead, we conclude that the Industrial Welfare Act regulation granted employees covered by that act a right to have the respite of a 30-minute meal period and granted them a meaningful remedy distinct from their right to be compensated for their hours worked. We also conclude that the trial court's determination to measure the remedy for the deprivation of that right as being

8

worth 30 minutes of wages is an appropriate measure of damages for such a deprivation.

A

It is a familiar standard of review that

> [w]e review de novo a trial court's grant of summary judgment. Greensun Grp., LLC v. City of Bellevue, 7 Wn. App. 2d 754, 767, 436 P.3d 397, review denied, 193 Wn.2d 1023 (2019). We affirm an order granting summary judgment only "if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Woods View II, LLC v. Kitsap County, 188 Wn. App. 1, 18, 352 P.3d 807 (2015). On review, we "conduct the same inquiry as the trial court and view all facts and their reasonable inferences in the light most favorable to the nonmoving party." Greensun Grp., 7 Wn. App. 2d at 767 (citing Pac. Nw. Shooting Park Ass'n v. City of Sequim, 158 Wn.2d 342, 350, 144 P.3d 276 (2006)).

Mendoza v. Expert Janitorial Servs., LLC, 11 Wn. App. 2d 32, 36-37, 450 P.3d 1220 (2019). Additionally, at summary judgment, we "may affirm the trial court on 'any theory established in the pleadings and supported by proof,' even where the trial court did not rely on the theory." Potter v. Wash. State Patrol, 165 Wn.2d 67, 78, 196 P.3d 691 (2008) (quoting Wilson Court Ltd. P'ship v. Tony Maroni's, Inc., 134 Wn.2d 692, 698, 952 P.2d 590 (1998)).

As discussed above, the parties stipulated, and the trial court concluded, that, apart from the alleged issue of Virginia Mason's affirmative defense that the class members had waived their right to a meal period, there were no genuine disputes as to any material fact regarding the question of Virginia Mason's liability. The court then entered findings of fact and ruled as a matter of law. The parties also entered into a stipulated judgment setting forth findings regarding the

damages in this matter. Given that, apart from the question of waiver, the issues presented to us are issues of law, which we review de novo.

B

We first address whether the Industrial Welfare Act regulation at issue, WAC 296-126-092, establishes a meaningful employee right to have the respite of a 30-minute meal period. We conclude that it does.

In 1976, the Department of Labor and Industries adopted "[t]he provisions of chapter 296-126 WAC, which contain labor standards for the protection of employees' safety, health, and welfare, [promulgated] under the authority of chapter 49.12 RCW," the Industrial Welfare Act. Wingert v. Yellow Freight Sys., Inc., 146 Wn.2d 841, 847, 50 P.3d 256 (2002); see also McGinnis v. State, 152 Wn.2d 639, 643, 99 P.3d 1240 (2004).

WAC 296-126-092 was one such labor standard regulation. It reads, in its entirety, as follows:

> **Meal periods—Rest periods.** (1) *Employees shall be allowed a meal period of at least thirty minutes which commences no less than two hours nor more than five hours from the beginning of the shift.* Meal periods shall be on the employer's time when the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer.
> *(2) No employee shall be required to work more than five consecutive hours without a meal period.*
> (3) Employees working three or more hours longer than a normal work day shall be allowed at least one thirty-minute meal period prior to or during the overtime period.
> (4) Employees shall be allowed a rest period of not less than ten minutes, on the employer's time, for each four hours of working time. Rest periods shall be scheduled as near as possible to the midpoint of the work period. No employee shall be required to work more than three hours without a rest period.

10

(5) Where the nature of the work allows employees to take intermittent rest periods equivalent to ten minutes for each 4 hours worked, scheduled rest periods are not required.

(Emphasis added); see also Wash. Dep't of Lab & Indus., Admin. Ord. 76-15 § 296-126-092 (May 17, 1976) [https://perma.cc/BY6M-JAN2].

Our "'[r]ules of statutory construction apply to administrative . . . regulations.'" O.M.A. Constr., Inc. v. Dep't of Lab. & Indus., ___ Wn. App. 2d ___, 550 P.3d 509, 513 (2024) (alterations in original) (internal quotation marks omitted) (quoting D.W. Close Co. v. Dep't of Lab. & Indus., 143 Wn. App. 118, 126, 177 P.3d 143 (2008)).  Hence, in a case interpreting that regulation, we stated that "[a] court need not construe unambiguous statutes, but instead should assume that the Legislature means exactly what it says.  '"Plain words do not require construction."'" Wingert v. Yellow Freight Sys., Inc., 104 Wn. App. 583, 588, 13 P.3d 677 (2000) (footnote and internal quotation marks omitted) (quoting Davis v. Dep't of Licensing, 137 Wn.2d 957, 964, 977 P.2d 554 (1999) (quoting State v. McCraw, 127 Wn.2d 281, 288, 898 P.2d 838 (1995))), aff'd, 146 Wn.2d 841, 50 P.3d 256 (2002).  Significantly, in Wingert, we held that the regulation's language that "'Employees shall be allowed a rest period of not less than 10 minutes'" had "clearly and unambiguously" granted employees covered by the Industrial Welfare Act a right to have a rest period.  104 Wn. App. at 587-88 (quoting WAC 296-126-092(4)).

We conclude that the provisions of WAC 296-126-092(1)-(2) clearly and unambiguously established a right to have a meal period.  Indeed, the meal and rest period regulation was adopted pursuant to an employee welfare act enacted

to protect workers' safety, health, and welfare. The plain language of that regulation set forth that "[e]mployees shall be allowed a meal period" and prohibits employees from working "more than five consecutive hours without a meal period." WAC 296-126-092(1), (2). And the regulation required scheduling a meal period no less than two hours nor more than five hours from the beginning of the shift. Thus, the regulation clearly and unambiguously prohibited employees from working for longer than five consecutive hours without a meal period. See Wingert, 104 Wn. App. at 588. We need not further construe such plain words and intent.[7]

Furthermore, over the past 20 years, we have repeatedly recognized that the foregoing regulation established a right to a meaningful meal period. See, e.g., Robertson v. Valley Commc'ns Ctr., 18 Wn. App. 2d 122, 133, 490 P.3d 230 (2021) ("Breaks are required by WAC 296-126-092."); Jeoung Lee v. Evergreen Hosp. Med. Ctr., 7 Wn. App. 2d 566, 575, 434 P.3d 1071 (2019) ("WAC 296-126-092(2) requires that '[n]o employee shall be required to work more than five

---

[7] The "on duty" provision in the second sentence of WAC 296-126-092(1), for its part, contemplates a specific meal period scenario, one in which an employer must compensate an employee for being "on duty" during a meal period while they have the respite of that meal period. As set forth above, the second sentence of WAC 296-126-092(1) requires that an employer compensate an employee when "the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer." Interpreting the phrase "on duty" in the context of a meal period, our Supreme Court instructed that "[a]n 'on duty' meal period is one during which the employee is relieved of all work duties—the employee need only remain 'on the premises or at a prescribed work site in the interest of the employer.'" Hill v. Garda CL Nw., Inc., 191 Wn.2d 553, 565-66, 424 P.3d 207 (2018) (quoting WAC 296-126-092(1)).

Therefore, the "on duty" provision requires that an employee be compensated for being "on duty" during a meal period while also being relieved of all work duties and able to have the respite of the 30-minute meal period. Indeed, as we have emphasized, even "paid breaks must provide relief from work or exertion." Pellino v. Brink's Inc., 164 Wn. App. 668, 692, 267 P.3d 383 (2011) (citing White, 118 Wn. App. at 283; Wash. Dep't of Lab. & Indus., Admin. Pol'y ES.C.6, § 7 (rev. June 24, 2005)).

consecutive hours without a meal period.'" (alteration in original)), aff'd, 195 Wn.2d 699, 464 P.3d 209 (2020); Hill v. Garda CL Nw., Inc., 198 Wn. App. 326, 352-53, 394 P.3d 390 (2017) ("'The requirements of RCW 49.12 and WAC 296-126-092, establish a minimum standard for working conditions for covered employees'"; "[t]he 'minimum standard' is a 30 minute meal period"; regulation created a "state right to meal periods"), rev'd on other grounds, 191 Wn.2d 553, 424 P.3d 207 (2018); Pellino v. Brink's, Inc., 164 Wn. App. 668, 684, 267 P.3d 383 (2011) (employer denied employees' right to receive meal periods or rest periods that allowed relief from work or exertion); White v. Salvation Army, 118 Wn. App. 272, 279, 283, 75 P.3d 990 (2003) ("[T]he underlying purpose for meal periods" is "to provide relief to employees from 'work or exertion.'").

Similarly, our Supreme Court, in interpreting the regulation at issue, has repeatedly recognized that it created a right to a meaningful meal period. See, e.g., Jeoung Lee, 195 Wn.2d at 702 n.2 (interpreting the regulation at issue to mean "that in a 12-hour shift, an employee *is entitled to* two 30-minute meal breaks and three 10-minute rest breaks" (emphasis added)); Hill, 191 Wn.2d at 557 (affirming, sub silentio, our ruling "that [the employers'] constant vigilance policy deprived the employees of *a meaningful meal period, as guaranteed under* WAC 296-126-092" (emphasis added)); Chavez v. Our Lady of Lourdes Hosp. at Pasco, 190 Wn.2d 507, 523, 415 P.3d 224 (2018) (employers "meal and rest period *obligations* implicate important public safety issues" (emphasis added)); Brady v. Autozone Stores, Inc., 188 Wn.2d 576, 581, 397 P.3d 120 (2017) ("Considering together the noted subsections and guidelines, an employee who

works five consecutive hours *is entitled to* a 30 minute meal break, which may be taken from the second through the fifth hour of his or her shift, but which may also be waived." (emphasis added)); McGinnis, 152 Wn.2d at 643 (the meal period regulation "prohibited employees from working more than five consecutive hours without a meal period").[8]

Given all of this, it is well-established the Department's Industrial Welfare Act meal and rest period regulation created a right to a meaningful meal period for employees covered by that act.[9] Accordingly, the first predicate underlying Virginia Mason's assertion fails.

---

[8] Our Supreme Court has also recognized that the regulation at issue established the right to have the respite of a rest period, notwithstanding that employees are to be paid for such rest periods. See, e.g., Chavez, 190 Wn.2d at 518 ("'It is not enough for an employer to simply schedule time throughout the day during which an employee can take a break if he or she chooses. Instead, employers must affirmatively promote meaningful break time. A workplace culture that encourages employees to skip breaks violates WAC 296-126-092 because it deprives employees of the benefit of a rest break "on the employer's time."'" (citations omitted) (quoting Lopez Demetrio v. Sakuma Bros. Farms, Inc., 183 Wn.2d 649, 658, 355 P.3d 258 (2015))); Pugh v. Evergreen Hosp. Med. Ctr., 177 Wn. App. 348, 351, 311 P.3d 1253 (2013) ("The suit was based on Washington's Industrial Welfare Act, which *requires Washington employers to provide* at least 10 minutes of paid resting time for every 4 hours of work" (emphasis added) (footnote omitted)); Wash. State Nurses Ass'n v. Sacred Heart Med. Ctr., 175 Wn.2d 822, 826, 832, 287 P.3d 516 (2012) ("missed opportunity to rest"); Wingert, 146 Wn.2d at 848 (meal and rest period regulation provides workers with a right to a rest period).

[9] Virginia Mason relies on our decision in White v. Salvation Army, 118 Wn. App. 272, for the proposition that a right to have the respite of a meal period does not exist. We have rejected this well-trodden—and incorrect—proposition in Pellino, 164 Wn. App. at 691-92, and Hill, 198 Wn. App. at 356, 358, and reject it here as well.

We also note that our decision in Iverson v. Snohomish County, 117 Wn. App. 618, 622-23, 72 P.3d 772 (2003), for its part, rejected a worker's request for compensation for working during a meal period not because such a right does not exist, but because he had "failed to produce any evidence that [supported the alleged] reality of his employment" and had not cited to any "authority which would require additional compensation for the duties that he is required to perform during his lunch period." Moreover, we later clarified that "Iverson does not establish that an employee's agreement to be 'on call' during a paid lunch period necessarily and always makes it permissible for the employer to demand unremitting work through the lunch period." Frese v. Snohomish County, 129 Wn. App. 659, 665-66, 120 P.3d 89 (2005). Thus, any attempt by Virginia Mason to rely on our decision in Iverson would be similarly unavailing.

C

The next predicate underlying Virginia Mason's central assertion on appeal is that, even if the regulation in question created a right to a meal period, it did not create a right to compensation distinguishable from the Washington Minimum Wage Act right to compensation for hours worked. Because we have long-recognized that chapter 49.12 RCW, the Industrial Welfare Act, provides employees an independent implied cause of action to vindicate a deprivation of a right to the respite contemplated by that act, because the Department adopted the meal period and rest period regulation pursuant to its authority arising under that act, and because we presume that a statutory right is not created without an accompanying remedy, Virginia Mason's arguments fail.

1

Virginia Mason's assertion implicates two distinct remedial employment laws passed by our legislature more than half a century ago. In 1959, our legislature enacted the Washington Minimum Wage Act (Minimum Wage Act), a remedial employment law establishing a minimum wage for employees of this state. LAWS OF 1959, ch. 294. In setting forth its purpose, the legislature declared as follows:

> Whereas the establishment of a minimum wage for employees is a subject of vital and imminent concern to the people of this state and requires appropriate action by the legislature to *establish minimum standards of employment within the state of Washington*, therefore the legislature declares that in its considered judgment the health, safety and the general welfare of the citizens of this state require the enactment of this measure, and exercising its police power, *the legislature endeavors by this act to establish a minimum wage for employees of this state to encourage*

15

*employment opportunities within the state.* The provisions of this act are enacted in the exercise of the police power of the state for the purpose of protecting the immediate and future health, safety and welfare of the people of this state.

LAWS OF 1961, ch. 18, § 1 (emphasis added); see also Carranza v. Dovex Fruit Co., 190 Wn.2d 612, 618, 416 P.3d 1205 (2018) (quoting RCW 49.46.005(1)).

In construing the provisions of that enactment, our Supreme Court has recognized that "[t]he [Minimum Wage Act (MWA)] requires payment of at least minimum wage for all hours worked."[10] Carranza, 190 Wn.2d at 618-19; see also Carranza, 190 Wn.2d at 618 ("'every employer shall pay to each of his or her employees who has reached the age of eighteen years wages at a rate of not less than [the applicable minimum wage] *per hour*'" (alteration in original) (quoting RCW 49.46.020(1-3)); Stevens v. Brink's Home Sec., Inc., 162 Wn.2d 42, 47, 169 P.3d 473 (2007) (citing RCW 49.46.020, .130); Robertson, 18 Wn. App. 2d at 131 (citing RCW 49.46.020, .130; WAC 296-126-002(8)). Therefore, in enacting the Minimum Wage Act, our legislature "evince[d] an intent to *create a right to compensation for each individual hour worked*." Carranza, 190 Wn.2d at 619 (emphasis added). This right to compensation for "hours worked" was grounded in the legislature's intention "to establish minimum standards of employment within the state of Washington." LAWS OF 1961, ch. 18, § 1; Carranza, 190 Wn.2d at 618 (quoting RCW 49.46.005(1)).

---

[10] Our Supreme Court has also noted that, as applicable here, "[t]he legislature has not defined hours worked" but according to the Department, "[u]nder WAC 296-126-002(8), '"[h]ours worked" . . . mean[s] all hours during which the employee is authorized or required . . . to be on duty on the employer's premises or at a prescribed work place.'" Stevens v. Brink's Home Sec., Inc., 162 Wn.2d 42, 47, 169 P.3d 473 (2007) (some alterations in original).

Nearly 15 years later, and still more than 50 years ago, the legislature enacted another remedial employment law, entitled the Industrial Welfare Act. LAWS OF 1973, ch. 16. There, the legislature announced a new legislative policy, that "*[i]t shall be unlawful to employ . . . any person* in any industry or occupation within the state of Washington *under conditions of labor detrimental to their health*." LAWS OF 1973, ch. 16, § 3 (emphasis added) (codified at RCW 49.12.020). In so doing, the legislature declared that

> *[t]he welfare of the state of Washington demands that . . . all employees be protected from conditions of labor which have a pernicious effect on their health. . . .* The state of Washington, therefore, exercising herein its police and sovereign power declares that inadequate wages and *unsanitary conditions of labor exert such pernicious effect.*

LAWS OF 1973, ch. 16, § 2 (emphasis added) (codified at RCW 49.12.010). Significantly, the legislature defined "conditions of labor" as including "the conditions of rest and meal periods for employees." LAWS OF 1973, ch. 16, § 1(5) (codified at RCW 49.12.005). To effectuate its enactment, the legislature mandated that the Department of Labor and Industries' industrial welfare committee investigate the conditions of labor in this state and that,

> if the committee finds that in any occupation, trade or industry, subject to this 1973 amendatory act, . . . the conditions of labor are detrimental to the health of employees, the committee *shall . . . have the authority to prescribe rules and regulations fixing standards, conditions and hours of labor for the protection of the safety, health and welfare of employees for all or specified occupations subject to this 1973 amendatory act.*

17

LAWS OF 1973, ch. 16, §§ 5-6 (emphasis added) (codified at RCW 49.12.041, .091).[11]

Three years later, in 1976, the Department did so, adopting Order 76-15, which, as set forth herein, prescribed meal and rest period standards for employees covered by the Industrial Welfare Act. Wash. Dep't of Lab. & Indus. Ord. 76-15, § 296-126-092; see also WAC 296-126-092; Wingert, 146 Wn.2d at 847 ("The provisions of chapter 296-126 WAC, which contain labor standards for the protection of employees' safety, health, and welfare, were adopted under the authority of chapter 49.12 RCW.").

Then, more than 20 years ago, we held that "an implied cause of action exists under chapter 49.12 RCW," the authority under which the Department adopted the meal and rest period regulation in question. Wingert, 104 Wn. App. at 591. We stated that

> [a] cause of action will be implied if (a) the plaintiff is "within the class for whose 'especial' benefit the statute was enacted"; (b) the "legislative intent, explicitly or implicitly, supports creating or denying a remedy"; and (c) "implying a remedy is consistent with the underlying purpose of the legislation." *Where a statute creates a new right but no remedy, the common law will provide that remedy.* [Bennett v. Hardy, 113 Wn.2d 912, 920, 784 P.2d 1258 (1990).]
>
> In Bennett v. Hardy, two 60-year-old plaintiffs alleged that their employer terminated them because of their age. They sued under RCW 49.44.090, which generally provides that discrimination in employment decisions on the basis of age is an unfair employment practice. Among other defenses, the employer

---

[11] The act also authorized the Department's director to "supervise the administration and enforcement of all laws respecting the employment and relating to the health, sanitary conditions, surroundings, hours of labor, and wages of . . . employees employed in business and industry in accordance with the provisions of chapter 49.12 RCW." LAWS OF 1973, ch. 16, § 12(5) (codified at RCW 43.22.270(5)); see also RCW 49.12.033.

asserted that the plaintiffs had no civil cause of action because RCW 49.44.090 does not explicitly include one for age discrimination plaintiffs.  The court disagreed and implied a cause of action, reasoning:

> *[W]e may rely on the assumption that the Legislature would not enact a statute granting rights to an identifiable class without enabling members of that class to enforce those rights.  Moreover . . . according a private right of action . . . is consistent with [the] underlying legislative purpose.*

[Bennett, 113 Wn.2d at 921.]

The Bennett factors similarly apply to the circumstances of this case.  The parties agree that the workers' status as employees clearly makes them persons for whom WAC 296-126-092 was promulgated.  Further, as in Bennett, we may rely on the assumption that the Department of Labor and Industries, through the delegated authority of the Legislature, *would not create a right to regular, periodic rest periods if it did not intend for employees to be able to enforce that right.*  Finally, *the remedial purpose of chapter 49.12 RCW to ensure the health and welfare of Washington workers is consistent with implying a remedy.*  RCW 49.12.010 states:

> The welfare of the state of Washington demands that all employees be protected from conditions of labor which have a pernicious effect on their health.  The state of Washington, therefore, exercising herein its police and sovereign power declares that inadequate wages and unsanitary conditions of labor exert such pernicious effect.
>
> In using the word "demands," the Legislature has forcefully communicated the importance it places on protecting employees from substandard working conditions.

Wingert, 104 Wn. App. at 591-92 (emphasis added) (footnotes omitted); see also

Wingert, 146 Wn.2d at 849-50 (affirming chapter 49.12 RCW implied cause of

action holding); Chavez, 190 Wn.2d at 518 ("The law also requires [the employer]

to compensate nurses for all missed breaks." (citing Wingert, 146 Wn.2d at 849-

51)).

Our reasoning in Wingert, applying Bennett to rest periods in the meal and

rest period regulation at issue, applies with equal force to meal periods.  The

parties herein do not dispute that the employees in question are protected by the provisions of WAC 296-126-092. We also rely on the well-founded assumption that the Department, through the delegated authority of the legislature, would not create a right to meal periods if it did not intend for employees to be able to enforce that right. See Wingert, 104 Wn. App. at 591-92. Lastly, as in Wingert, "the remedial purpose of chapter 49.12 RCW to ensure the health and welfare of Washington workers is consistent with implying a remedy." 104 Wn. App. at 592.

We see no reason to depart from Wingert as applied to the right to a meal period. Indeed, the underlying statutory authority creating an implied cause of action is the same, chapter 49.12 RCW, the underlying regulatory authority is the same, WAC 296-126-092, and the language of the provisions is the same. Compare WAC 296-126-092(1) ("Employees shall be allowed a meal period."), with WAC 296-126-092(4) ("Employees shall be allowed a rest period."). Thus, an implied cause of action exists under the Industrial Welfare Act for covered employees to seek relief for an employer's deprivation of an employee's right to a meal period.

2

Virginia Mason nevertheless asserts that, so long as employees are compensated for their time worked during a meal period, they are not entitled to further compensation for a deprivation of the right to have the respite of a meal period. This is so, Virginia Mason contends, because the compensation provided by the Minimum Wage Act for hours worked is the exclusive remedy available to employees who work through a meal period. Because that assertion is

20

predicated on the erroneous notion that the right to the respite of a meal period has no value, Virginia Mason's assertion fails.

When reviewing a legislative or regulatory enactment, we presume "that the Legislature [or agency] does not indulge in vain and useless acts and that some significant purpose or object is implicit in every legislative enactment [and agency regulation]." See Fifteen-O-One Fourth Ave. Ltd. P'ship v. Dep't of Revenue, 49 Wn. App. 300, 303, 742 P.2d 747 (1987) (citing Kelleher v. Ephrata Sch. Dist. No. 165, 56 Wn.2d 866, 873, 355 P.2d 989 (1960)). Indeed, "[w]e will not assume that the legislature [or agency], by enacting [a statute or regulation] engaged in a meaningless act." See Johnson v. Recreational Equip., Inc., 159 Wn. App. 939, 949, 247 P.3d 18 (2011) (citing JJR Inc. v. City of Seattle, 126 Wn.2d 1, 10, 891 P.2d 720 (1995)).

Neither the legislature, through the Industrial Welfare Act, nor the Department, through its meal and rest period regulation, engaged in a useless act by establishing an employee's right to have the respite of a meal period. In enacting the Minimum Wage Act, the legislature intended to establish a minimum standard for employment that included ensuring that employees receive compensation for their hours worked. The legislature did not mention unhealthy conditions of labor, meal periods, or rest periods as falling within the wage act's purview.

Conversely, in enacting the Industrial Welfare Act, the legislature intended to protect employees against unhealthy conditions of labor in this state, specifically including those conditions surrounding meal and rest periods.

21

Similarly, in promulgating its meal and rest period regulation, the Department specifically intended to prescribe standards designed to promote the legislature's intention to protect workers from unhealthy labor conditions in enacting that welfare act.

Given all that, it is reasonable to assume that the legislature, in enacting the Industrial Welfare Act, did more than duplicate the right to compensation for hours worked as set forth in the Minimum Wage Act. Indeed, as we stated in Wingert, under the Industrial Welfare Act regulation, "an implied right of action exists because, '[w]ithout an implicit creation of a remedy, the statute is meaningless.' Indeed, without a remedy for violations, employers could violate WAC 296-126-092 with impunity. This would surely thwart the purpose of the regulation." 104 Wn. App. at 593-94 (alteration in original) (footnote omitted) (quoting Bennett, 113 Wn.2d at 920).

Moreover, the Industrial Welfare Act and the meal and rest period regulation are remedial in nature, and thus we are to liberally construe them in favor of the employee. Pellino, 164 Wn. App. at 684 ("Remedial statutes protecting employee rights must be liberally construed" (citing Int'l Ass'n of Fire Fighters, Local 46 v. City of Everett, 146 Wn.2d 29, 35, 42 P.3d 1265 (2002))). In construing such protective measures, we consider

> "all the terms and provisions of the act in relation to
> the subject of the legislation, the nature of the act, the
> general object to be accomplished and consequences
> that would result from construing the particular statute
> in one way or another."
> Burns v. City of Seattle, 161 Wn.2d 129, 146, 164 P.3d 475 (2007)
> (internal quotation marks omitted) (quoting State v. Krall, 125

> Wn.2d 146, 148, 881 P.2d 1040 (1994)). We assume that the legislature does not intend to create inconsistent statutes, and we read statutes together "to achieve a 'harmonious total statutory scheme . . . which maintains the integrity of the respective statutes.'" Filo Foods, LLC v. City of SeaTac, 183 Wn.2d 770, 792-93, 357 P.3d 1040 (2015) (alteration in original) (internal quotation marks omitted) (quoting Am. Legion Post No. 149 v. Dep't of Health, 164 Wn.2d 570, 588, 192 P.3d 306 (2008)).

Coaker v. Dep't of Lab. & Indus., 16 Wn. App. 2d 923, 931-32, 484 P.3d 1265 (2021).

Were we to adopt Virginia Mason's position, our holding would be at odds with the subject matter, nature, and legislative purpose of the welfare act and the resulting consequences on employees of construing the act consistent with Virginia Mason's position would be untenable. Indeed, if an employer could have a policy of providing an employee with an unpaid meal period, require an employee to work during that unpaid meal period, pay that employee for their hours worked, and not provide that employee with another meal period, then, on balance, the employer would receive 30 minutes of additional labor from the employee and the employee would have not have received 30 minutes of respite from work—frustrating the legislature's clear directive in the welfare act to protect workers against unhealthy conditions of labor. We cannot adopt a proposed interpretation that would thwart the purpose of such remedial employee protection measures.

Conversely, were we to adopt the construction that the legislature intended to create a compensable right to a meal period, the consequence of such a construction would be that employers would be incentivized to provide their employees a meal period free from work and exertion (or else owe them

23

additional compensation should they require the employee to work during that meal period and deprive them of their 30 minutes of respite). This construction aligns with and vindicates the subject matter, nature, and legislative purpose of the welfare act and is the proper construction of the act and its meal and rest period regulation.

Thus, the right to have a meal period is a distinct right enforceable through the implied cause of action arising under the Industrial Welfare Act. Accordingly, the second predicate underlying Virginia Mason's assertion fails.

D

The third and final predicate underlying Virginia Mason's assertion on this issue is that the trial court erred by determining that 30 minutes of compensation was an adequate remedy for the medical center's deprivation of the applicable employees' right to have the respite of a 30-minute meal period. Again, Virginia Mason's contention fails.

Our Supreme Court has instructed that, in a case decided at summary judgment, "[t]he trial judge's ultimate choice of remedy is reviewed for abuse of discretion, but 'a trial court necessarily abuses its discretion if it awards damages based upon an improper method of measuring damages.'" Moore v. Health Care Auth., 181 Wn.2d 299, 304-05, 332 P.3d 461 (2014) (quoting In re Marriage of Farmer, 172 Wn.2d 616, 625, 259 P.3d 256 (2011)).

We have recognized that a remedy in the form of the employee's wages is appropriate for a violation of the chapter 49.12 RCW regulation. See, e.g., Hill, 198 Wn. App. at 360 ("violating the meal period requirement is a wage violation");

24

Pellino, 164 Wn. App. at 698-99 (affirming trial court's damages award issued in reliance on expert testimony establishing backpay damages for violation of meal and rest period provisions of WAC 296-126-092); Wingert, 104 Wn. App. at 590 (employer has an "obligation to pay for the additional 10 minutes of labor it receives when its employees are legally entitled to a rest break"); see also Wash. State Nurses Ass'n v. Sacred Heart Med. Ctr., 163 Wn. App. 272, 280-81, 258 P.3d 96 (2011) (recognizing payment of wages as remedy for violation of chapter 49.12 RCW for working through a rest period), rev'd on other grounds by 175 Wn.2d 822, 287 P.3d 516 (2012).

Our Supreme Court has also recognized that wage-based compensation is an appropriate remedy for such a violation. See, e.g., Wash. State Nurses Ass'n, 175 Wn.2d at 830 (recognizing payment of overtime wages as proper remedy for violation of chapter 49.12 RCW where total workday was extended when employees were required to work through a rest period); Wingert, 146 Wn.2d at 850 ("employees have an implied cause of action for unpaid wages" under chapter 49.12 RCW for working through a rest period); see also Lopez Demetrio v. Sakuma Bros. Farms, Inc., 183 Wn.2d 649, 659, 663, 355 P.3d 258 (2015) (pursuant to an agricultural worker meal and rest period regulation, "employers must pay a wage separate from the piece rate for time spent on rest breaks," a wage equal to "*at least* the applicable minimum wage or the pieceworker's regular rate of pay, whichever is greater").

Here, the trial court determined that damages in an amount equal to 30 minutes of wages was an adequate remedy for Virginia Mason's deprivation of the plaintiffs' right to have the respite of a 30-minute meal period.

The trial court did not thereby abuse its discretion. Selecting damages valued at 30 minutes of wages is an appropriate remedy for Virginia Mason's conduct herein. As set forth above, we have repeatedly recognized that measuring a remedy as the value of wages for the period of time spent working— rather than resting—during a meal or rest period is appropriate. The trial court's determination that payment of 30 minutes of wages for a deprivation of the right to have a 30-minute meal period reflects that the trial court measured the remedy according to the value attributed by Virginia Mason to the wages for that amount of work by the plaintiffs. This was reasonable. Thus, there was no error.

Virginia Mason nevertheless urges that we conclude that the trial court's damages award constituted a judicially created penalty. Virginia Mason's averment fails.

As discussed above, the Industrial Welfare Act, along with the meal and rest period regulation, set forth an implied cause of action with a corresponding remedy to compensate for a deprivation of the rights granted therein. The trial court's chosen remedy does not constitute a punitive or exemplary damage but, rather, is a reasonable measure of damages awarded to compensate the plaintiffs for their loss of the right to have the respite of a meal period. Thus, the remedy in question is predicated in a right existing at law and is not a judicially

created penalty. Accordingly, Virginia Mason's argument to the contrary is unavailing.

In summation, Virginia Mason fails to establish all three predicates of its assertion challenging the trial court's determination that the plaintiffs were entitled to compensation for Virginia Mason's deprivation of their right to have the respite of a meal period.

E

There is another reason why Virginia Mason's assertion in this matter fails. The medical center's assertion is inconsistent with the Department of Labor and Industries' guidance interpreting WAC 296-126-092 and its interpretation of that regulation as amicus curiae on appeal in this matter.

"We give a high level of deference to an agency's interpretation of its regulations because the agency has expertise and insight gained from administering the regulation that the reviewing court does not possess." Seattle Bulk Shipping, Inc. v. Dep't of Lab. & Indus., 25 Wn. App. 2d 762, 769, 524 P.3d 733 (2023) (citing Litchfield v. KPMG, LLP, 170 Wn. App. 431, 441 n.26, 285 P.3d 172 (2012)). Such deference is not warranted when there is a "'compelling indication that the agency's regulatory interpretation conflicts with legislative intent or is in excess of the agency's authority.'" Port of Tacoma v. Sacks, 19 Wn. App. 2d 295, 304, 495 P.3d 866 (2021) (internal quotation marks omitted) (quoting Litchfield, 170 Wn. App. at 441).

In 2002, the Department issued guidance interpreting its Industrial Welfare

Act regulation WAC 296-126-092, which, as most recently updated in 2017,

reads as follows:

**MEAL AND REST PERIODS FOR NONAGRICULTURAL WORKERS AGE 18 AND OVER**
. . . .
**5. When is a meal period required?**
*Meal period requirements are triggered by more than five hours of work*:
  - Employees working five consecutive hours or less need not be allowed a meal period. *Employees working over five hours shall be allowed a meal period.* See WAC 296-126-092(1).
  - The 30-minute meal period must be provided between the second and fifth working hour.
    . . .
**6. When may meal periods be unpaid?**
Meal periods are not considered hours of work and may always be unpaid *as long as employees are completely relieved from duty and receive 30 minutes of uninterrupted mealtime.*

. . . .
**7. When must the meal period be paid?**
Meal periods are considered hours of work when the employer requires employees to remain on duty on the premises or at a prescribed work site *and* requires the employee to act in the interest of the employer.

When employees are required to remain on duty on the premises or at a prescribed work site and act in the interest of the employer, *the employer must make every effort to provide employees with an uninterrupted meal period. If the meal period should be interrupted due to the employee's performing a task, upon completion of the task, the meal period will be continued until the employee has received 30 minutes total of mealtime.* Time spent performing the task is not considered part of the meal period. The entire meal period must be paid without regard to the number of interruptions.

As long as the employer pays the employees during a meal period in this circumstance *and otherwise complies with the provisions of WAC 296-126-092*, there is no violation of this law, and payment of an extra 30-minute meal break is not required.

Wash. Dep't of Lab. & Indus., Admin. Pol'y ES.C.6, at 1-4 (rev. Dec. 1, 2017),

https://www.lni.wa.gov/workers-rights/_docs/esc6.1.pdf [https://perma.cc/H9GY-

BNKH] (emphasis added). Both we and our Supreme Court have repeatedly

found this policy to be persuasive as to the meaning of WAC 296-126-092. See,

e.g., Brady, 188 Wn.2d at 581; Wash. State Nurses Ass'n, 175 Wn.2d at 831;

Hill, 198 Wn. App. at 352-53, 356; Pellino, 164 Wn. App. at 687-88; White, 118

Wn. App. at 277.

> Additionally, as amicus in this matter, the Department states that
>
> [f]or nearly fifty years, L&I has mandated that workers receive meal breaks so that workers may receive a critical respite from work duties. Washington law demands that employers provide employees a 30-minute meal period and work no more than five hours before receiving one. WAC 296-126-092. . . .
> An employee who is forced to work through a break cannot simply be bought out for the hours worked because this would mean that nothing would address the employer's failure to provide a legally-mandated break. The buyout would be business as usual for compensating for "hours worked"—a duty already found in the law. But a buyout fails to address the missed right to a meal break itself.
> Instead, to comply with WAC 296-126-092, the employer must provide compensation for the missed opportunity to rest, eat lunch, and perform other activities on a break. The additional 30 minutes equates to the opportunity cost of the missed break because it is time the employee would have spent not working but for the employer's decision to deny a meal break.

Br. of Amicus Curiae Dep't of Lab. & Indus. at 1-2. The Department's brief

further states that

> L&I has long provided guidance that "[c]omplete" relief from duty is required when the employees have an unpaid meal period. See Administrative Policy ES.C.6.1 at 2. If the meal period is *unpaid*, then this time is wholly the employees' time. Policy ES.C.6.1 at 3. This policy confirms that the rule obligates the employer to provide a meal break. If the break is missed or

29

> interrupted, the employer must pay the worker for the break *and* allow the worker to complete the full 30-minutes of break time. Policy ES.C.6.1 at 3-4 . . . .
>
> Thus, L&I's longstanding position is that workers must receive payment for time that they spent working *and* receive the lunch break. ES.C.6.1 at 3-4. If the break is not provided then an employer must provide additional compensation.

Br. of Amicus Curiae Dep't of Lab. & Indus. at 7-8.

The Department's guidance and its representations as amicus on appeal are not only consistent with our analysis in this matter but are also entitled to meaningful deferential consideration as being in alignment with our legislature's intent and well within the Department's authority. The guidance recognizes that employees are entitled to a 30-minute meal period after working a shift of at least five hours and that a meal period is one in which an employee is completely relieved from duty and receives 30 minutes of uninterrupted mealtime. It also recognizes the specific circumstance in which an employer must pay an employee for their meal period when the employer requires the employee to be "on duty" during a meal period while the employee is relieved of all work duties during that meal period. It lastly recognizes that, so long as an employer compensates an employee for being "on duty" during a meal period and otherwise complies with the provisions of WAC 296-126-092—i.e., provides the employee with an opportunity to have the respite of a 30-minute meal period—then no violation of the regulation has occurred. As discussed above, the purpose of the Industrial Welfare Act was to protect workers against conditions of labor—including conditions surrounding meal and rest periods—that were detrimental to their health. To remediate such conditions, the legislature granted

the Department the authority to "prescribe rules and regulations fixing standards, conditions and hours of labor for the protection of the safety, health and welfare of employees." RCW 49.12.005, .010, .041, .091. The Department's interpretation is consistent with our analysis in this matter.

Accordingly, Virginia Mason's assertion also fails for being inconsistent with the Department's own interpretation of its properly promulgated Industrial Welfare Act regulation.

F

Lastly, Virginia Mason asserts that, even if the plaintiffs herein had a right to be compensated for their lost opportunity to have the respite of a meal period, the trial court erred by granting summary judgment because there remained genuine issues of material fact for trial with regard to Virginia Mason's affirmative defense that the plaintiffs had waived their right to a meal period during the time in question.

Our Supreme Court has instructed that there is no "strict liability" for an employer's deprivation of an employee's right to a meal period because the right to a meal period "may also be waived" by the employee. Brady, 188 Wn.2d at 579. The high court therefore set forth the following framework for determining whether an employee had waived their right to a meal break:

> [A]n employee asserting a meal break violation under WAC 296-126-092 can meet his or her prima facie case by providing evidence that he or she did not receive a timely meal break. *The employer may then rebut this by showing that in fact* no violation occurred or *a valid waiver exists.* Pellino, 164 Wn. App. at 696-97 (waiver is an "affirmative defense" on which employer bears the burden of proof).

31

Brady, 188 Wn.2d at 584 (emphasis added). The high court added that

> [a]s amicus Department of Labor and Industries observes, this should not be an onerous burden on the employer, who is already keeping track of the employee's time for payroll purposes. See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-88, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946) (applying a comparable burden shifting and record retention responsibility on the employer regarding employee's claim under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219).

Brady, 188 Wn.2d at 584. With regard to establishing a valid waiver, we have

stated that

> [a] waiver is the intentional and voluntary relinquishment of a known right. Jones [v. Best], 134 Wn.2d [232, ]241[, 950 P.2d 1 (1998)]. It may result from an express agreement or be inferred from circumstances indicating an intent to waive. Bowman v. Webster, 44 Wn.2d 667, 669, 269 P.2d 960 (1954). To constitute implied waiver, there must exist unequivocal acts or conduct evidencing an intent to waive; waiver will not be inferred from doubtful or ambiguous factors. Cent. Wash. Bank v. Mendelson–Zeller, Inc., 113 Wn.2d 346, 354, 779 P.2d 697 (1989). Employees can waive the meal break requirements but may not waive the right to a rest break. Administrative Policy ES.C.6, §§ 8, 9, at 4.

Pellino, 164 Wn. App. at 696-97. We may affirm summary judgment dismissal on

any basis supported by the record. Bavand v. OneWest Bank, 196 Wn. App.

813, 825, 385 P.3d 233 (2016).

Here, the superior found, as a predicate for certifying the class in this

matter, that between 6,100 to 8,400 employees reported missing a rest or meal

break during the time in question. Virginia Mason, at summary judgment,

presented the following argument in support of its affirmative defense that the

plaintiffs had, in actuality, waived their right to a meal period:

32

**Plaintiffs' Argument Fails to Account for the Fact that Employees May Elect To Waive Meal Periods**.

. . . .

The ability to waive a meal period means that workers can voluntarily choose to skip or work through a meal period—and get paid for that time instead. This is commonplace, for example, where employees would prefer to leave early from a shift instead of staying in the workplace longer just to take a required meal period. Other employees would prefer to get paid for a waived meal period by working through it.

In addition, at the hearing on the parties' summary judgment motions, Virginia Mason presented the trial court with the following argument:

[T]here's a big difference between rest breaks and meal breaks where waiver is available. And I think what [plaintiffs' counsel] is saying is did we submit a written document that says -- that we gave to everybody saying they waived their first meal period? No. But that is also not required by the law. It's not required that a waiver be in writing. And somebody can waive a lunch period just sua sponte on the spot, you know, on any given day and decide that they want to do something different. And that's what makes meal periods so inherently different here and why there should not be a penalty on top of what people are already paid for the meal period.

The trial court's summary judgment order did not expressly address Virginia Mason's affirmative defense of waiver.

Nevertheless, the trial court did not err by granting summary judgment in this matter. Virginia Mason had the burden to show facts supporting the existence of a valid waiver—or waivers—by the plaintiffs of their right to a meal period during the time in question. The medical center did not carry that burden at summary judgment. It did not present the trial court with specific instances in which its employees had indicated that they had waived their right to a meal period during the time in question. Rather, the medical center merely stated that the employees in question had the option of waiving their meal periods during the

33

time in question and argued, without presenting corresponding evidence, that waiver of such a meal period was "commonplace" and that it was possible that the employees in question had done so. Without more, this is insufficient to establish a genuine issue of material fact necessary to survive summary judgment. Indeed, we will not infer waiver from such "doubtful or ambiguous factors." Pellino, 164 Wn. App. at 697 (citing Cent. Wash. Bank, 113 Wn.2d at 354).[12]

Thus, Virginia Mason does not establish trial court error in this regard. Accordingly, the trial court did not err by granting summary judgment with regard to the plaintiffs' right to compensation under the Industrial Welfare Act for the lost opportunity to have the respite of a meal period.[13]

---

[12] Virginia Mason nevertheless asserts that the trial court concluded, as a matter of law, that the medical center was strictly liable for failing to provide adequate meal periods to the plaintiffs. This is so, Virginia Mason contends, because the trial court did not consider the medical center's affirmative defense that the plaintiffs had waived their right to a meal period.

Virginia Mason misconstrues the trial court's conclusion. The record, including the summary judgment hearing in this matter, merely reflects that the trial court was presented with, but did not accept, Virginia Mason's waiver argument. Indeed, as discussed above, the record supports that there was an absence of genuine issue of material fact relating to Virginia Mason's affirmative defense of waiver.

[13] Virginia Mason also asserts that a recent amendment to the Industrial Welfare Act supports its contention that no statutory authority previously granted a right to meal period free from work or exertion. The Department, in its appellate briefing, responded as follows:

Virginia Mason's suggestion that RCW 49.12.483 (E2SSB 5236 (2023)) shows that there are no meal break remedies lacks merit. Appellant's Br. 48. RCW 49.12.483 affirmatively directs L&I to "enforce the provisions of RCW 49.12.480," which provides that "an employer shall provide employees with meal and rest periods *as required by law*" (subject to a few specific exceptions). This refers back to the existing meal and rest break rule, so E2SSB 5236 obligates L&I to enforce these provisions. Employers were already obligated to give health care professionals meal and rest breaks and compensate them when missed, but this reinforces L&I's obligation to seek remedies that already exist. The new reporting requirements and sanctions related to them are simply an additional remedy to ensure that hospital staff receive the breaks they are entitled to under the provisions of WAC 296-126-092 and RCW 49.12.480.

Br. of Amicus Curiae Dep't of Lab. & Indus. at 12-13.

The Department's reasoning is persuasive. We reject Virginia Mason's contrary claim.

III

Virginia Mason next asserts that the trial court erred in its summary judgment orders by determining that the medical center was liable to the plaintiffs for its failure to compensate them for their missed rest periods. This is so, Virginia Mason contends, because a genuine issue of material fact exists regarding whether it had adequately compensated the class members for those rest periods. Because Virginia Mason conceded before the trial court that, as applicable to this issue, no genuine issues of material fact remained to be decided, Virginia Mason's assertions fail.

RAP 9.12 provides that

> [o]n review of an order granting or denying a motion for summary judgment *the appellate court will consider only evidence and issues called to the attention of the trial court.* The order granting or denying the motion for summary judgment shall designate the documents and other evidence called to the attention of the trial court before the order on summary judgment was entered.

(Emphasis added.) As a corollary, when a party concedes an issue before the trial court, we consider that issue as no longer being called to the attention of the trial court. See RAP 9.12.

CR 56(c) provides, in pertinent part, that

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Given that, embedded in every summary judgment proceeding is a determination of two issues: whether no genuine issue as to any material fact exists and, if so,

35

whether the moving party is entitled to judgment as a matter of law.  It follows from this that a motion for summary judgment can be decided as a matter of law when issues of fact remain but are neither genuine nor material.  See CR 56(c).  Putting all this together, if a party does not argue—or otherwise disavows—that there is a genuine issue as to a certain material fact on summary judgment, this court will not consider a party's contention on appeal that such a disputed material fact exists.  RAP 9.12; CR 56(c).

Here, Virginia Mason's summary judgment briefing argued that the plaintiffs' claim for missed rest period wages was moot and nonjusticiable because Virginia Mason "has retroactively paid employees for any potentially missed rest breaks."  Virginia Mason did not bring to the trial court's attention that a genuine issue of material fact existed regarding whether it had adequately compensated the class members for working during rest periods.  And notably, Virginia Mason's counsel apprised the trial court as follows during the summary judgment hearing:

> [THE COURT]: . . . [I]s there any reason why I should not be deciding this one way or the other on summary judgment where you think there are some factual disputes that need to go to a trier of fact?
> [VIRGINIA MASON'S COUNSEL]: The only factual issue that I potentially see here, Your Honor, is the issue of waiver and whether or not, you know, people individually on a day-by-day, case-by-case basis waived a meal period.

The trial court later ruled that "Virginia Mason owes prejudgment interest to Class Members on the compensation owed for missed rest breaks, even if the retroactive payments issued on May 28, 2021 covered the back wages owed for

those breaks," implicitly determining that Virginia Mason had failed to pay the plaintiffs for working through certain rest periods.

Now on appeal, Virginia Mason asserts for the first time that the trial court erred by determining that Virginia Mason had, during the time in question, failed to pay its workers a wage for working through their rest periods.

We will not reverse the trial court for relying on Virginia Mason's summary judgment pleadings and verbal assurances that no genuine issues of material fact remained on any issue (other than the issue of waiver of the right to a meal period). Virginia Mason's alleged failure to pay the plaintiffs a wage for their missed rest period reasonably falls within Virginia Mason's broad concession and is consistent with the legal theory advanced at summary judgment. As the master of its own pleadings, Virginia Mason assumed the responsibility to bring the existence of factual disputes to the trial court's attention. It cannot now escape that its counsel conceded before the trial court that no such factual disputes remained, nor that the trial court relied on such concession in issuing its ruling.

We therefore do not further consider Virginia Mason's assertion on appeal.

IV

Virginia Mason next asserts that, even if it deprived the plaintiffs of their right to a meal period or a rest period, exemplary damages were not warranted pursuant to the Wage Rebate Act. Virginia Mason also asserts that the trial court erred by awarding prejudgment interest to the plaintiffs. As to each assertion, Virginia Mason is wrong.

A

RCW 49.52.050 of the Wage Rebate Act provides, in pertinent part, that

> [a]ny employer or officer, vice principal or agent of any employer . . . who
>> . . .
>> . . . *[w]ilfully and with intent to deprive the employee of any part of his or her wages*, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract . . .
>> [s]hall be guilty of a misdemeanor.

RCW 49.52.050(2) (emphasis added).

Our Supreme Court has instructed that "[t]he standard for proving willfulness is low—our cases hold that an employer's failure to pay will be deemed willful unless it was a result of '"careless[ness] or err[or].""" Hill, 191 Wn.2d at 561 (alterations in original) (internal quotation marks omitted) (quoting Wash. State Nurses Ass'n, 175 Wn.2d at 834 (quoting Morgan v. Kingen, 166 Wn.2d 526, 534, 210 P.3d 995 (2009)); see also RCW 49.52.080 (presuming willfulness).

The court further instructed that an affirmative defense to a willful deprivation of wages can be raised in

> wage claims over which the employer and employees have a "'bona fide'" or "'fairly debatable'" dispute, meaning a dispute that is both objectively and subjectively reasonable. E.g., Wash. State Nurses Ass'n v. Sacred Heart Med. Ctr., 175 Wn.2d 822, 834, 287 P.3d 516 (2012) (internal quotation marks omitted) (quoting Morgan v. Kingen, 166 Wn.2d 526, 534, 210 P.3d 995 (2009); Schilling v. Radio Holdings, Inc., 136 Wn.2d 152, 161, 961 P.2d 371 (1998)).

Hill, 191 Wn.2d at 557.

The court emphasized that, "[u]nder our prior decisions, the burden is on the employer to show the existence of such a bona fide dispute." Hill, 191 Wn.2d at 562 (citing Wash. State Nurses Ass'n, 175 Wn.2d at 834; Schilling, 136 Wn.2d at 165). To establish the affirmative defense of a bona fide dispute, the court instructed, the employer must establish both an objective and subjective component. Hill, 191 Wn.2d at 562. To satisfy the objective component, the dispute provided by the employer "must be objectively reasonable—that is, the issue must be 'fairly debatable.'" Hill, 191 Wn.2d at 562 (quoting Schilling, 136 Wn.2d at 161; citing Wash. State Nurses Ass'n, 175 Wn.2d at 836). To satisfy the subjective component, "[t]he employer must have a 'genuine belief' in the dispute at the time of the wage violation." Hill, 191 Wn.2d at 562 (internal quotation marks omitted) (quoting Chelan County Sheriffs' Ass'n v. Chelan County, 109 Wn.2d 282, 301, 745 P.2d 1 (1987)). At summary judgment, the objective component is a question of law, while the subjective component is an issue of fact.[14]

If an employer is determined to have violated RCW 49.52.050, then RCW 49.52.070 applies. That provision reads, in pertinent part, that

> [a]ny employer and any officer, vice principal or agent of any employer who shall violate any of the provisions of RCW 49.52.050 (1) and (2) shall be liable in a civil action by the aggrieved employee or his or her assignee to judgment *for twice the amount of the wages unlawfully rebated or withheld by way of exemplary*

---

[14] When reviewing a trial court's willfulness determination at summary judgment, the subjective, genuine belief component is a question of fact, "'[h]owever, where no dispute exists as to the material facts, the court may dispose of such questions on review of summary judgment.'" Backman v. Nw. Pub. Ctr., 147 Wn. App. 791, 796, 197 P.3d 1187 (2008) (quoting Champagne v. Thurston County, 163 Wn.2d 69, 81-82, 178 P.3d 936 (2008)).

39

*damages*, together with costs of suit and a reasonable sum for attorney's fees.[15]

Our Supreme Court has recognized that this double damages provision also applies to "'properly promulgated, substantive agency regulations,'" which "'have the force and effect of law.'" Champagne v. Thurston County, 163 Wn.2d 69, 80 n.9, 178 P.3d 936 (2008) (internal quotation marks omitted) (quoting Wingert, 146 Wn.2d at 848; citing WAC 296-126-092).

As pertinent here, we have recognized that a cognizable cause of action under the Wage Rebate Act arises when an employer violates the Industrial Welfare Act meal and rest period regulation. Hill, 198 Wn. App. at 360 (citing Wingert, 104 Wn. App. at 586, 588-90).[16]

B

Virginia Mason asserts that, even if it willfully deprived the plaintiffs of their wages by failing to compensate them for the right to have the respite of a meal period, it did so due to a bona fide dispute as to whether it owed such compensation to the plaintiffs. Virginia Mason's assertion fails.

Here, the plaintiffs argued that Virginia Mason deprived them of compensation for missing meal periods between March 24, 2017 and February 10, 2020. The parties did not dispute that, during this time, Virginia Mason had a policy of compensating the plaintiffs for their hours worked during meal periods

---

[15] The provision further sets forth that "the benefits of this section shall not be available to any employee who has knowingly submitted to such violations." RCW 49.52.070.

[16] Indeed, in Hill, we held that

treating violations of meal period requirements as wage violations is consistent with Wingert. The Plaintiffs here were paid for every minute they worked, but they were deprived of opportunities to rest. If this court does not treat this as a wage violation, it is unclear what recourse the Plaintiffs would have.

198 Wn. App. at 361.

but did not have a policy of compensating the plaintiffs for a deprivation of their right to have the respite of those meal periods. Given that, the trial court determined that "Virginia Mason's refusal to pay Class Members an additional 30 minutes of compensation for missed meal breaks was willful and not reasonably debatable under RCW 49.52.050 and .070, entitling Class Members to double damages on that claim."

Virginia Mason's refusal to pay the plaintiffs for the deprivation of the right to a 30-minute meal period free from work and exertion was willful. It is undisputed that Virginia Mason's timekeeping system and compensation policies did not provide the plaintiffs compensation for a deprivation of the right to have the respite of a meal period.

Nevertheless, Virginia Mason asserts that it had a bona fide dispute as to whether such a deprivation constituted a wage violation because, according to Virginia Mason, whether such right existed is not well-settled law in this state and is, therefore, fairly debatable.

Virginia Mason fails to establish the objective component of its bona fide dispute affirmative defense. As amply discussed herein, it is well-settled that employees covered by the Industrial Welfare Act have a right to a meal period free from rest or exertion. Such a conclusion plainly and unambiguously follows from the language of the act itself and the Department's meal and rest period regulation. Furthermore, we recognized in Wingert, 104 Wn. App. at 591, an implied cause of action arising from chapter 49.12 RCW, the Department recognized, in its guidance initially issued in 2002, Admin. Pol'y ES.C.6.1, at 1-4,

41

this right, and, thereafter, we have repeatedly recognized the existence of such a right—implicitly or explicitly—in White, 118 Wn. App. at 279-80, Pellino, 164 Wn. App. at 680, 689, and Hill, 198 Wn. App. at 352.

Given that, it was well-established during the time in question that an employer causing an employee to not receive the respite of a 30-minute meal period deprived the employee of a right to have such a respite.[17]  Therefore, Virginia Mason does not establish that the existence of such a right was fairly debatable.  Thus, Virginia Mason fails to establish one of the two necessary components to support its bona fide dispute affirmative defense.  Accordingly, the trial court did not err by determining that Virginia Mason's failure to provide compensation for such a deprivation was willful.

C

Virginia Mason next asserts that the trial court erred by determining that its failure to pay the plaintiffs missed rest period wages was willful and therefore constituted a wage violation warranting exemplary damages.  Again, Virginia Mason's assertion fails.

To reiterate, the Wage Rebate Act prohibits employers from, "[w]ilfully and with intent to deprive the employee of any part of his or her wages," paying "any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract" or regulation.  RCW

---

[17] Virginia Mason relies on the trial court's certification of this issue for discretionary review as support for the proposition that the right to a 30-minute respite was not well-settled law in this state.  Again, however, "[t]he objective, 'fairly debatable' inquiry is a legal question about the reasonableness or frivolousness of an argument that we review de novo."  Hill, 191 Wn.2d at 562 (citing In re Pers. Restraint of Caldellis, 187 Wn.2d 127, 385 P.3d 135 (2016)).  We thus give the trial court's interpretation of whether certain question of law are well-settled no deference.

49.52.050(2); Champagne, 163 Wn.2d at 81. Our Supreme Court has instructed that "willfulness is found where 'the employer's refusal to pay [is] volitional. . . . Willful means merely that the person *knows what he is doing*, intends to do what he is doing, and is a free agent.'" Morgan, 166 Wn.2d at 534 (emphasis added) (alteration in original) (internal quotation marks omitted) (quoting Schilling, 136 Wn.2d at 159-60). "Accordingly, *the employer must have knowledge of any wage withholding policies* and fail to correct any improper wage withholding to be liable under RCW 49.52.070 for wage withholding." Jumamil v. Lakeside Casino, LLC, 179 Wn. App. 665, 684, 319 P.3d 868 (2014).

Notice of an allegation of an unpaid wage is sufficient to put an employer on notice for the purpose of the knowledge component of the willfulness standard. Jumamil, 179 Wn. App. at 683 (absentee owner of casino had knowledge that casino owed wages to employee when employee sent presuit demand letter to employer claiming wage withholding by employer since five months earlier); see also Schilling, 136 Wn.2d at 161 (employer knowledge of owed wages attributed from employer's letter to employee identifying partial wage payment and acknowledgement "that the check was for less than '100% of the amount due'").

As discussed herein, Virginia Mason broadly conceded at summary judgment that, apart from the issue of waiver of meal periods, no genuine issues of material fact existed for trial. The trial court reasonably interpreted this to signify, in part, that no genuine issue of material fact existed with regard to whether Virginia Mason had failed to compensate the plaintiffs for having worked

through rest periods. In addition, Virginia Mason did not dispute at summary judgment that, in 2018, it had received a class action complaint from certain of its employees in a different lawsuit setting forth allegations that its timekeeping system and policies had resulted in certain of its employees going uncompensated for working through rest periods. The trial court ruled that "Virginia Mason's failure to provide additional compensation for all missed rest breaks was willful under RCW 49.52.050 and .070, because Virginia Mason unreasonably delayed paying retroactive compensation once it learned of the gaps and deficiencies in its system."

The trial court did not err in so ruling. Virginia Mason received notice in 2018 of an allegation that its timekeeping system and policies had resulted in unpaid wages to its employees. This is sufficient to put Virginia Mason on notice for the purpose of the knowledge component of the willfulness standard. See Jumamil, 179 Wn. App. at 675, 684. Despite that knowledge as early as 2018, until May 2021 Virginia Mason did not attempt to make a payment to the plaintiffs for such missed rest period wages. Given the low standard for willfulness, the trial court did not err by determining that Virginia Mason's failure to pay the plaintiffs' missed rest period wages was willful.

D

Virginia Mason next contends that the trial court erred by determining that it was liable to the plaintiffs for prejudgment interest on the lost use value of the wages that it retroactively paid them to compensate them for their hours worked during rest periods. Again, Virginia Mason is incorrect.

44

As set forth above, a judgment entered in a CR 56(c) proceeding must show, among else, that there is no genuine issue as to any material fact, and this court, on review of an order granting or denying a motion for summary judgment, will only consider issues called to the attention of the trial court. RAP 9.12. And, again, if a party does not argue—or otherwise disavows—that there is a genuine issue as to a certain material fact on summary judgment, this court will not consider a party's contention on appeal that such a disputed material fact exists. See RAP 9.12. Additionally, arguments not supported by pertinent authority or adequate analysis need not be considered. RAP 10.3(a)(6); Saunders v. Lloyd's of London, 113 Wn.2d 330, 345, 779 P.2d 249 (1989).

As discussed above, Virginia Mason conceded at summary judgment that, as applicable here, no genuine issues of material fact remained and that the trial court could decide the issues before it as a matter of law. Accordingly, the court ruled that "Virginia Mason owes prejudgment interest to Class Members on the compensation owed for missed rest breaks, even if the retroactive payments issued on May 28, 2021 covered the back wages owed for those breaks."

On appeal, Virginia Mason does not present us with adequate argument that the trial court erred by determining that prejudgment interest is owed to the plaintiffs on the compensation owed for the missed rest break wages. Rather, as above, Virginia Mason relies on an assertion that there are genuine issues of material fact that the trial court "failed to acknowledge." Br. of Appellant at 57.

Again, Virginia Mason cannot, with regard to the plaintiffs' prejudgment interest claim, now distance itself from its pleadings and its counsel's concession.

45

It cannot give assurances to the trial court that no factual disputes remain on summary judgment and then assert on appeal that the opposite is so. Given that, not only does Virginia Mason raise the existence of factual disputes for the first time on appeal, it also does so after the trial court relied on its assurance that no such disputes were at issue at summary judgment. We therefore decline to consider Virginia Mason's assertion.

Furthermore, even if Virginia Mason had presented the foregoing argument and not so conceded, it does not present adequate argument or pertinent decisional authority tending to establish that the trial court erred as a matter of law in its prejudgment interest ruling. RAP 10.3(a)(6); Saunders, 113 Wn.2d at 345.

Thus, the trial court did not err by determining that Virginia Mason was liable to the plaintiffs for prejudgment judgment interest on the wages owed for their hours worked during rest periods. Accordingly, the trial court did not err by granting summary judgment to the plaintiffs and denying summary judgment to Virginia Mason.

V

Androckitis, on behalf of the plaintiffs, requests an award of attorney fees and costs on appeal. An award of attorney fees on appeal is permitted if supported by applicable law. RAP 18.1. Androckitis relies on RCW 49.46.090, RCW 49.48.030, and RCW 49.52.070, each of which authorizes an award of attorney fees and costs in legal actions related to enforcing the rights of employees. We conclude that Androckitis is the prevailing party in this matter.

46

Therefore, we grant Androckitis's request.[18]  Upon proper application, a commissioner of our court will enter an appropriate order.

Affirmed.

Dwyer, J.

WE CONCUR:

Díaz, J.                          Coburn, J.

---

[18] Additionally, Virginia Mason asserts that the trial court erred by denying its motion for summary judgment on the plaintiffs' meal period Minimum Wage Act claims because, according to Virginia Mason, the trial court "found Virginia Mason liable for violating the MWA" with regard to hours worked during meal periods.  Br. of Appellant at 50.  However, the trial court's summary judgment orders do not reflect that it made such a finding but, rather, that its findings were predicated on Virginia Mason's liability under the Industrial Welfare Act.  Therefore, we decline to consider this assertion.

Furthermore, insofar as Virginia Mason supports any of its assertions with reliance on nonbinding decisional authority from other jurisdictions, we find such authority unpersuasive.